632 So.2d 736 (1994)
Stephen CRABTREE and Debra Sue Crabtree
v.
STATE FARM INSURANCE CO.
No. 93-C-0509.
Supreme Court of Louisiana.
February 28, 1994.
*737 Madeleine M. Landrieu, Robert J. David, Gainsburgh, Benjamin, Fallon, David & Ates, New Orleans, for applicant.
David J. Mithcell, Dan R. Dorsey, Porteous, Hainkel, Johnson & Sarpy, New Orleans, Stephen N. Elliott, Bernard, Cassisa, Saporito & Elliott, Metairie, for respondent.
KIMBALL, Justice.[*]
We granted certiorari to consider whether a wife's mental anguish suffered upon witnessing *738 an injury to her husband constitutes a separate bodily injury under an automobile insurance policy thereby entitling the wife to her own per person policy limit subject to the aggregate per accident limit. We conclude the wife's mental anguish constitutes "bodily injury" within the meaning of the policy, and finding that the policy language defining "bodily injury to one person" to include "all injury and damages to others resulting from this bodily injury" does not reasonably contemplate bodily injury to others, we conclude the wife's mental anguish claim is not subject to the single person policy limit regardless of whether her mental anguish "results from" or "derives from" her husband's bodily injuries. We further conclude the wife's mental anguish was suffered "in the same accident" as that which caused the injury to her husband. Accordingly, we hold the wife's mental anguish constitutes a separate bodily injury under the policy entitling her to her own per person policy limit subject to the aggregate per accident limit.

FACTS
On January 27, 1990, Stephen Crabtree was riding his motorcycle while his wife Debra followed him in her automobile. An oncoming car, owned by Robert F. Vetter and operated by his son, James, crossed the center line and struck Mr. Crabtree head on. Mrs. Crabtree witnessed the accident. When she went to help her husband, she discovered one of his legs had been almost completely severed below the knee.
Plaintiffs, Mr. and Mrs. Crabtree, brought suit against their UM insurer, the Vetters, and the Vetters' insurer, State Farm Mutual Automobile Insurance Company, seeking damages for Mr. Crabtree's injuries and for Mrs. Crabtree's loss of consortium and mental anguish claims.[1] Prior to trial, the parties stipulated to the following: (1) the accident was caused solely by the fault of James Vetter; (2) Debra Crabtree meets all the requisites for a Lejeune claim;[2] (3) State Farm's policy provides to plaintiff limits of $25,000 per person with an aggregate of $50,000 per accident; and (4) Stephen Crabtree's injuries exceed $25,000. Additionally, in argument before the trial court, both parties stated State Farm had stipulated that Debra's Lejeune claim is worth or exceeds $25,000.
In accordance with the stipulations, State Farm tendered into the registry of the court the sum of $27,604.17, representing its single bodily injury policy limits plus accrued legal interest. Both parties agreed this amount was to be applied to Stephen Crabtree's personal injuries and Debra Crabtree's loss of consortium claim.
State Farm contended it had no further liability under the policy. Plaintiffs argued Mrs. Crabtree's Lejeune claim constituted an additional bodily injury under the policy such that Mrs. Crabtree would be entitled to her *739 own $25,000 per person limit subject to the $50,000 per accident aggregate limit.
Plaintiffs filed a "Motion for Declaratory Judgment" seeking a declaration that the mental anguish suffered by Mrs. Crabtree constitutes a separate bodily injury from Mr. Crabtree's thus invoking the $50,000 per accident limits of the policy.[3] State Farm, on the other hand, filed a motion for summary judgment arguing Mrs. Crabtree's Lejeune claim is "derivative" of Mr. Crabtree's claim and thus subject to the $25,000 single policy limit attributable to Mr. Crabtree's injuries. State Farm argued in the alternative that mental anguish is not a "bodily injury" covered under the policy.
The trial court granted State Farm's motion and denied plaintiffs' motion, finding Mrs. Crabtree's Lejeune claim is derivative.
The Louisiana Fifth Circuit Court of Appeal affirmed, agreeing with the trial court's conclusion that Mrs. Crabtree's Lejeune claim derived from the bodily injury to Mr. Crabtree. 613 So.2d 701. The court of appeal further concluded Mrs. Crabtree's damages "resulted from" the bodily injury to her husband within the meaning of the policy's definition of "bodily injury to one person." Accordingly, the court held State Farm was liable only up to the $25,000 single person limit.
We granted plaintiffs' writ application[4] and now reverse.

ANALYSIS
The State Farm insurance policy at issue obligates State Farm to "pay damages which an insured becomes legally liable to pay because of ... bodily injury to others." The policy provides $25,000 in coverage for damages due to bodily injury to each person with an aggregate of $50,000 in bodily injury for each accident regardless of the number of people injured in the accident. Under the Limits of Liability section, as modified by the 6994RR Amendatory Endorsement, the policy provides:
The amount of bodily injury liability coverage is shown on the declarations page under "Limits of LiabilityCoverage A Bodily Injury, Each Person, Each Accident". Under "Each Person" is the amount of coverage [$25,000] for all damages due to bodily injury to one person. "Bodily injury to one person" includes all injury and damages to others resulting from this bodily injury. Under "Each Accident" is the total amount of coverage [$50,000], subject to the amount shown under "Each Person", for all damages due to bodily injury to two or more persons in the same accident.
The policy defines "bodily injury" as "bodily injury to a person and sickness, disease or death which results from it."
Plaintiffs contend State Farm is liable under the $50,000 aggregate policy limit for "all damages due to bodily injury to two or more persons in the same accident." State Farm contends its liability is limited to the $25,000 policy limit for "all damages due to bodily injury to one person."
To determine the amount of State Farm's liability, we must interpret the insurance policy to decide three issues: (1) whether the policy language defining "bodily injury to one person" to include "all injury and damages to others resulting from this bodily injury" encompasses Mrs. Crabtree's mental anguish; (2) whether Mrs. Crabtree's mental anguish constitutes "bodily injury" as defined in the policy; and (3) whether Mrs. Crabtree suffered her mental anguish "in the same accident" as that which caused Mr. Crabtree's bodily injuries. If "bodily injury to one person" encompasses Mrs. Crabtree's mental anguish, then State Farm's liability is limited to the $25,000 policy limit for "all damages due to bodily injury to one person." If not, and if Mrs. Crabtree's mental anguish constitutes "bodily injury" suffered "in the same accident," then State Farm is liable under the $50,000 aggregate policy limit for "all *740 damages due to bodily injury to two or more persons in the same accident."
(1) Does "bodily injury to one person" encompass Mrs. Crabtree's mental anguish?
State Farm characterizes the first issue in terms of whether Mrs. Crabtree's Lejeune claim is "derivative" of Mr. Crabtree's claim for personal injuries. According to State Farm, even if Mrs. Crabtree's mental anguish constitutes "bodily injury," her Lejeune claim is by its nature "derivative" of Mr. Crabtree's claim and therefore necessarily falls under the husband's single person bodily injury limit. Because our decision must rest solely on the terms of the insurance contract between the parties,[5] we interpret State Farm's argument to mean that "bodily injury to one person" encompasses Mrs. Crabtree's mental anguish because that mental anguish "results from" or "derives from" Mr. Crabtree's bodily injury within the intendment of the similar policy language used to define "bodily injury to one person."
State Farm bases its argument on several court of appeal decisions which have held a loss of consortium claim is derived from the injury to the tort victim and therefore falls under the single person policy limit. For example, in Shepard v. State Farm Mutual Automobile Insurance Co., 545 So.2d 624, 629 (La.App. 4th Cir.), writ denied, 550 So.2d 627, 628 (La.1989), the fourth circuit held the tort victim's parents' consortium claim was derived from their son's injuries and therefore fell under the policy limit applicable to bodily injury to one person. The court stated:
[A] loss of consortium claim is a derivative claim of the primary victim's injuries.... The derivative claim does not come into existence until someone else is injured. Thus, the parents ... did not suffer a harm to their relational interest until Gregory suffered his injuries.... [B]ecause the right of action in the loss of consortium claim is derived from Gregory's injuries, recovery is restricted to the per person limits. Therefore, if the injured party exhausts the per person limits, the derivative claim is extinguished.
Likewise, in Sharff v. Ohio Casualty Insurance Co., 584 So.2d 1223, 1226 (La.App. 2d Cir.), writ denied, 589 So.2d 1055 (La.1991), the second circuit held a mother's consortium claim fell under the single person bodily injury limit and not the aggregate per accident limit because her consortium claim was "derivative" of her son's claim for bodily injury. The court stated the mother's consortium claim was one "arising from her son's claim for bodily injury and therefore the single per person limit governs both the son's claim for personal injuries and the mother's claim for loss of consortium."[6]
In the present case, the trial court accepted State Farm's argument that Mrs. Crabtree's Lejeune claim is analogous to her loss of consortium claim and therefore "derivative." The court of appeal agreed with the trial court's conclusion "that Article 2315.6 claims are derived from the bodily injury to the tort victim," but then observed, "That conclusion does not, however, end the essential inquiry here, which is simply what coverage is provided under the contract of insurance." The court of appeal went on to find that the policy language defining "bodily injury to one person" as "all injury and damages to others resulting from this bodily injury" is "indistinguishable in meaning from the language of [La.Civ.Code art. 2315.6], which refers to damages suffered by family members `as a result of injury to the tort victim."[7] Concluding Mrs. Crabtree's damages "resulted from" the bodily injuries to Mr. Crabtree within the meaning of the policy's definition of "bodily injury to one person," the court held the $25,000 single person *741 policy limit applied to Mrs. Crabtree's claim as well as Mr. Crabtree's claim. The court did not decide whether Mrs. Crabtree's mental anguish constitutes "bodily injury" within the meaning of the policy, apparently accepting State Farm's additional argument that even if Mrs. Crabtree's mental anguish constitutes "bodily injury," her Lejeune claim falls within the single person policy limit for the sole reason that the claim "resulted from" Mr. Crabtree's bodily injuries.
An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. Louisiana Ins. Guar. Ass'n v. Interstate Fire & Casualty Co., 93-0911 p. 5 (La. 1/14/94), 630 So.2d 759, 763; Smith v. Matthews, 611 So.2d 1377, 1379 (La.1993); Schroeder v. Board of Supervisors of La. State Univ., 591 So.2d 342, 345 (La.1991). If the words of the policy are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and the agreement must be enforced as written. Smith, 611 So.2d at 1379; Central La. Elec. Co. v. Westinghouse Elec. Corp., 579 So.2d 981, 985 (La.1991); Pareti v. Sentry Indem. Co., 536 So.2d 417, 420 (La. 1988); see La.Civ.Code art. 2046.[8] An insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Interstate, 93-0911 p. 5, 630 So.2d at 763; Fertitta v. Palmer, 252 La. 336, 211 So.2d 282, 285 (1968). The policy should be construed as a whole and one portion thereof should not be construed separately at the expense of disregarding another. Westinghouse, 579 So.2d at 985; Pareti, 536 So.2d at 420; see La.Civ. Code art. 2050.[9] If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer who issued the policy and in favor of the insured. Interstate, 93-0911 p. 6, 630 So.2d at 764; Smith, 611 So.2d at 1379; Pareti, 536 So.2d at 420; see La.Civ.Code art. 2056.[10]
Applying the foregoing principles of contract interpretation to the policy language at issue, we find it unnecessary to decide in this case whether a Lejeune claim "derives from" or "results from" the other tort victim's bodily injuries. Instead, we find that our answer to the second question posed hereinwhether Mrs. Crabtree's mental anguish constitutes "bodily injury" as defined in the policyis determinative of whether "bodily injury to one person" encompasses Mrs. Crabtree's mental anguish. We therefore reject the reasoning of the court of appeal and State Farm that even if Mrs. Crabtree's mental anguish constitutes "bodily injury," her Lejeune claim falls within the single person policy limit merely because the claim "resulted from" Mr. Crabtree's bodily injuries. On the contrary, we conclude that even if Mrs. Crabtree's Lejeune claim "derives from" or "results from" Mr. Crabtree's bodily injuries within the intendment of the policy language defining "bodily injury to one person," under this policy "bodily injury to one person" does not encompass Mrs. Crabtree's Lejeune claim. We base our decision on the clear and explicit terms of the insurance policy construed as a whole, and on our conclusion, as explained later in this opinion, that Mrs. Crabtree's mental anguish constitutes "bodily injury" as that term is defined in this policy.[11]
*742 The "resulting from" clause must be construed together with the policy language explaining the coverage for "Each Accident," which provides as follows:
Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to bodily injury to two or more persons in the same accident.
The policy language explaining the coverage for "Each Person," which includes the "resulting from" clause, provides:
Under "Each Person" is the amount of coverage for all damages due to bodily injury to one person. "Bodily injury to one person" includes all injury and damages to others resulting from this bodily injury.
In arguing Mrs. Crabtree's Lejeune claim "resulted from" Mr. Crabtree's bodily injuries and therefore falls within the per person policy limits even if Mrs. Crabtree's mental anguish constitutes "bodily injury," State Farm in effect construes the definition of "bodily injury to one person" to include "all injury, including bodily injury, and damages to others resulting from this bodily injury." Under State Farm's construction, all injuries including bodily injuries which "result from" another's bodily injury would be subject to the single per person limit while all other bodily injuries would be covered under the aggregate per accident limit. Thus, if an oncoming car hit Mr. Crabtree while he was driving with Mrs. Crabtree, and the injury to him caused him to drive off the road and hit a tree resulting in external, physical injury to Mrs. Crabtree, the latter's injury, under State Farm's interpretation, would "result from" the former's injury and therefore fall under the single bodily injury limit. Likewise, if, as a result of the impact, Mr. Crabtree was propelled off his motorcycle and into a pedestrian, the pedestrian's external, physical injuries would "result from" Mr. Crabtree's injuries and therefore fall under the single person bodily injury limits.
As illustrated by the foregoing hypotheticals, State Farm's construction of the policy language defining "bodily injury to one person" strains the meaning of the policy language, respectively enlarges and restricts the separate policy provisions beyond what is reasonably contemplated by the terms, and achieves an absurd result. If State Farm had intended "bodily injury to one person" to include "all injury, including bodily injury, and damages to others resulting from this bodily injury," the policy would have so provided. Moreover, State Farm's interpretation construes the "resulting from" clause in isolation at the expense of disregarding the clear and explicit language defining the aggregate coverage for "Each Accident" as "all damages due to bodily injury to two or more persons in the same accident."
Construing the policy provisions in light of each other so that each is given the meaning suggested by the policy as a whole, we conclude the policy language defining "bodily injury to one person" to include "all injury and damages to others resulting from this bodily injury" does not reasonably encompass bodily injury to others under the single person limit. We interpret the policy to mean instead that where one person suffers bodily injury, or where one person suffers bodily injury and one or more other persons suffer injury and damages other than bodily injury as a result of the former's bodily injury, the amount of coverage for bodily injury to one person applies ($25,000). This interpretation is consistent with State Farm's contractual obligation to "pay damages which an insured becomes legally liable to pay because of ... bodily injury to others." On the other hand, where two or more persons suffer bodily injury in the same accident, the aggregate amount of coverage for each accident applies ($50,000) even if one or more persons' bodily injury "results from" another's bodily injury. Additionally, the coverage for each accident is "subject to the amount shown under `Each Person'," referring to "the amount of coverage for all damages due to bodily injury to one person" ($25,000), up to the aggregate per accident limit ($50,000) for two or more persons.
*743 In sum, because we conclude, for reasons which follow, that Mrs. Crabtree's mental anguish constitutes "bodily injury" within the meaning of the policy, it follows under the clear and explicit terms of the policy construed as a whole that "bodily injury to one person" as defined therein does not encompass Mrs. Crabtree's Lejeune claim. Mrs. Crabtree's Lejeune claim therefore is not subject to the single person policy limit applicable to her husband's claim regardless of whether her mental anguish "results from" or "derives from" Mr. Crabtree's bodily injuries.
(2) Does Mrs. Crabtree's mental anguish constitute "bodily injury"?
The State Farm policy defines "bodily injury" as "bodily injury to a person and sickness, disease or death which results from it." State Farm argues this definition does not include mental anguish and emotional distress which is not coincidental with any actual physical harm to the body.[12] Plaintiffs, on the other hand, cite cases concerning the interpretation of other policies' definitions of "bodily injury" in order to support their contention that mental anguish is a form of "bodily injury" covered under this policy; however, because the policy language at issue in this case is unlike the policy language in those cases, those cases do not provide the final word on how this policy should be interpreted. See, e.g., Central La. Elec. Co. v. Westinghouse Elec. Corp., 579 So.2d 981, 985 n. 6 (La.1991).
In Levy v. Duclaux, 324 So.2d 1 (La.App. 4th Cir.1975), writ denied, 328 So.2d 887, 888 (La.1976), plaintiff was mistakenly accused of shoplifting in a clothing store. The trial court found the defendant's liability insurance policy did not provide coverage for plaintiff's injuries because it believed plaintiff's mental anguish and emotional distress arising from the incident did not constitute "bodily injury" under the policy.[13] The court of appeal reversed, stating:
[Plaintiff] was subjected to immediate mental distress upon being accused a shoplifter in the presence of many people. While such an emotional experience operates primarily on the mind of a victim such suffering cannot be isolated from the body. Some physical effects must flow from the experience even if only confined to increased perspiration or adrenaline in the system.
....
... The facts of our case show that plaintiff's mental distress was accompanied by immediate external physical manifestations of crying and hysteria and her functions were outwardly affected for some time after the incident.
....
We are unable to separate a person's nerves and tensions from his body. It is common knowledge that worry and anxiety can and often do have a direct effect on other bodily functions. In the instant case, plaintiff's humiliation brought physical manifestations, such as tears and hysteria, which were observed and attested to by numerous witnesses.[14]

Levy, 324 So.2d at 9-10.
In Holcomb v. Kincaid, 406 So.2d 646 (La. App. 2nd Cir.1981), plaintiff sued her ex-husband for fraud after discovering he had married her while not yet divorced from his first wife. Defendant's insurance company refused to furnish a defense on several grounds, one of which was that plaintiff had not suffered a "bodily injury" compensable under the policy.[15] The court of appeal *744 found the definition of "bodily injury" was ambiguous, and construing the ambiguity against the insurer, held plaintiff's mental anguish and humiliation were within the policy's definition of "bodily injury." As with the Levy court, the second circuit discussed the physical manifestations of plaintiff's mental anguish and concluded, "The physical results which she alleges from defendant's actions would appear to fit within the policy definition of her bodily injury which includes sickness and disease." Holcomb, 406 So.2d at 649.
In Bloodworth v. Carroll, 455 So.2d 1197 (La.App. 2nd Cir.1984), rev'd on other grounds, 463 So.2d 1313 (La.1985), defendant intentionally backed his car into several people. Although plaintiff was not externally, physically injured in the incident, she suffered mental anguish as a result of fear that the car would hit her. Defendant's insurer argued there was no coverage under the policy because plaintiff had not suffered any "bodily injury" as defined therein.[16] The court of appeal held the policy definition of bodily injury "includes mental anguish, fright, distress and humiliation" such as that suffered by the plaintiff therein.
Similarly, in Shepard v. State Farm Mutual Automobile Insurance Co., 545 So.2d 624 (La.App. 4th Cir.), writ denied, 550 So.2d 627 (La.1989), the fourth circuit rejected the requirement there be a physical manifestation of the injury in order for it to be deemed a "bodily injury" under the insurance policy at issue therein.
Contrarily, State Farm relies on Albin v. State Farm Mutual Automobile Insurance Co., 498 So.2d 171 (La.App. 1st Cir.), writ denied, 498 So.2d 1088 (La.1986), in which the first circuit, in interpreting a "bodily injury" definition exactly like the one in this case, held the injuries suffered in a loss of consortium claim did not constitute a "bodily injury" under the policy. The court stated:
We do not believe the term "bodily injury," in its general and popular use, includes purely emotional injuries, especially where there is neither physical trauma nor a physical manifestation of the injury.

Albin, 498 So.2d at 173.[17]
Without passing on the propriety of the Albin court's interpretation of the insurance policy involved therein, particularly insofar as the "purely emotional injuries" it referred to were loss of consortium damages, we expressly decline to extend that interpretation to the type of injuries suffered by Lejeune claimants. We reach this conclusion because the policy's definition of "bodily injury" is ambiguous and should be construed in favor of coverage[18] and because interpretation of the term "bodily injury" to include Lejeune damages is reasonable and consistent with the jurisprudence of this court.
The definition is ambiguous in at least two respects. First, the definition is circular in that the term being defined is used within its own definition: "Bodily injury is bodily injury to a person, and sickness, disease or death which results from it." Secondly, if the definition was intended to cover only external, physical injuries, then "bodily injury" easily could have been defined in a more restrictive fashion through the use of such words.
Moreover, interpretation of the term "bodily injury" to include Lejeune damages is consistent with the jurisprudence of this court. In Lejeune, 556 So.2d at 570, we made it clear that in order to be compensable, mental pain and anguish suffered because of injury to a third person must be "both severe and debilitating." We pointed out that "[o]ther states have recognized that `[t]he essence of the tort is the shock caused by the perception of the especially horrendous event.'" Id. at 570 n. 11 (quoting Gates v. Richardson, 719 P.2d 193 (Wyo.1986)) (emphasis added). Additionally, although not having to do with the interpretation of a policy definition, it is nonetheless instructive to note that in Sparks v. Tulane Medical Center Hospital & Clinic, 546 So.2d 138, 146 *745 (La.1989), we interpreted the phrase "physical structure of the body" as it is used in the Worker's Compensation Act to include injuries to the mental health of an employee. We observed: "An individual's mental health is an essential component to the overall operation of the physical structure of his body.... [T]here is no bright-line distinction between `physical' and `mental' injuries, either in medicine or in law...."
Where the language of an insurance policy provision is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied. In this case, it is reasonable to find "bodily injury" as defined in the policy herein includes severe and debilitating mental pain and anguish such as that suffered by Lejeune claimants. We therefore conclude Mrs. Crabtree's mental anguish constitutes "bodily injury" as defined in the State Farm policy.
(3) Did Mrs. Crabtree suffer her mental anguish "in the same accident"?
For the $50,000 per accident aggregate policy limit to apply, we must find not only that Mrs. Crabtree suffered a "bodily injury" but also that she suffered that bodily injury "in the same accident" as that which caused the bodily injury to Mr. Crabtree.
State Farm argues Mrs. Crabtree was merely a witness to the accident and not involved in it. We disagree.
Mrs. Crabtree saw her husband violently struck and severely injured by an oncoming car. She suffered mental pain and anguish precisely because she witnessed the event which caused the severe injuries to her husband. The same accident which caused Mr. Crabtree's "bodily injury" also caused Mrs. Crabtree's "bodily injury."
We conclude Mrs. Crabtree's "bodily injury," the mental anguish she suffered when she saw the car strike her husband and when she ran to his side to comfort him, occurred "in the same accident" as that which caused Mr. Crabtree's bodily injuries.[19]

CONCLUSION
For the foregoing reasons, we hold Mrs. Crabtree's mental anguish constitutes a separate bodily injury under the State Farm policy entitling her to her own per person policy limit subject to the aggregate per accident limit. Accordingly, we conclude the court of appeal erred in affirming the trial court's judgment granting State Farm's motion for summary judgment and denying plaintiffs' "Motion for Declaratory Judgment."[20] We therefore reverse the judgments of the court of appeal and trial court and render judgment against State Farm and in favor of plaintiffs in the amount of the aggregate per accident policy limit of FIFTY THOUSAND DOLLARS ($50,000.00) plus interest and costs.
REVERSED AND RENDERED.
NOTES
[*] Marcus, J., not on panel. See La.S.Ct.Rule IV, Part 2, § 3.
[1] Plaintiffs' UM insurer was dismissed from the case on an exception of lack of jurisdiction over the person.
[2] In Lejeune v. Rayne Branch Hospital, 556 So.2d 559 (La.1990), this court recognized a plaintiff's right to recover damages for severe mental pain and anguish caused by witnessing serious injury to a close relation. The Louisiana Legislature subsequently codified Lejeune in La.Civ.Code art. 2315.6, which provides:

Art. 2315.6. Liability for damages caused by injury to another
A. The following persons who view an event causing injury to another person, or who come upon the scene of the event soon thereafter, may recover damages for mental anguish or emotional distress that they suffer as a result of the other person's injury:
(1) The spouse, child or children, and grandchildren of the injured person, or either the spouse, the child or children, or the grandchild or grandchildren of the injured person.
(2) The father and mother of the injured person, or either of them.
(3) The brothers and sisters of the injured person or any of them.
(4) The grandfather and grandmother of the injured person, or either of them.
B. To recover for mental anguish or emotional distress under this Article, the injured person must suffer such harm that one can reasonably expect a person in the claimant's position to suffer serious mental anguish or emotional distress from the experience, and the claimant's mental anguish or emotional distress must be severe, debilitating, and foreseeable. Damages suffered as a result of mental anguish or emotional distress for injury to another shall be recovered only in accordance with this Article.
[3] In this suit for damages, we construe plaintiffs' "Motion for Declaratory Judgment" as having the same effect as a motion for summary judgment. See La.Code Civ.P. art. 862 ("[A] final judgment shall grant the relief to which the party in whose favor it is rendered is entitled ...").
[4] 616 So.2d 690 (La.1993).
[5] See Louisiana Ins. Guar. Ass'n v. Interstate Fire & Casualty Co., 93-0911 p. 5 (La. 1/14/94), 630 So.2d 759, 763 ("The parties' intent as reflected by the words in the policy determine the extent of coverage").
[6] See also Sandoz v. State Farm Mutual Auto. Ins. Co., 620 So.2d 441 (La.App. 3d Cir.1993); Carroll v. State Farm Ins. Co., 519 So.2d 265 (La. App. 5th Cir.), writ denied, 520 So.2d 756 (1988). Cf. Albin v. State Farm Mutual Auto. Ins. Co., 498 So.2d 171 (La.App. 1st Cir.), writ denied, 498 So.2d 1088 (La.1986).
[7] See supra note 2 for text of La.Civ.Code art. 2315.6.
[8] La.Civ.Code art. 2046 provides: "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."
[9] La.Civ.Code art. 2050 provides: "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."
[10] La.Civ.Code art. 2056 provides: "In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text. A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party."
[11] As we find it unnecessary in this case to decide whether a Lejeune claim "derives from" or "results from" the other tort victim's bodily injuries, we express no opinion regarding the correctness of the lower courts' findings that a Lejeune claim is analogous to a loss of consortium claim. We note, however, that in Lejeune, 556 So.2d at 568-69, this court found the defendant hospital owed an independent duty to protect the plaintiff from mental pain and anguish occasioned by the negligent infliction of injury to the plaintiff's husband.
[12] State Farm admits the definition of "bodily injury" would provide coverage not only for Stephen Crabtree's physical injuries but also for any emotional problems he suffered resulting from his injuries.
[13] That particular policy defined "bodily injury" as "bodily injury, sickness or disease sustained by any person."
[14] We note that the Levy court also attached significance to the fact there was some evidence the plaintiff had been grabbed during the incident. We do not believe, however, that the definition of "bodily injury" under the present policy requires actual, physical contact. Rather, the definition turns on the type of injury suffered, not the source of that "bodily injury."
[15] The policy in question in Holcomb defined "bodily injury" as "bodily injury, sickness or disease, including care, loss of services and death resulting therefrom."
[16] The policy provided: "Bodily injury means bodily injury, sickness, or disease ... sustained by the insured."
[17] See also Nickens v. McGehee, 184 So.2d 271 (La.App. 1st Cir.), writ denied, 249 La. 199, 186 So.2d 159 (1966).
[18] See supra note 10 and accompanying text.
[19] We do not decide herein whether a person who meets the Lejeune requirements but who was not timely present at the immediate scene of the incident has incurred his or her "bodily injury" "in the same accident" as the "bodily injury" to the original injured party.
[20] See supra note 3.