928 So.2d 74 (2005)
Paul K. SMITH
v.
Beau J. BURTON, Jimmy Burton's Air Conditioning & Heating, Inc., and State Farm Mutual Automobile Insurance Company.
No. 2004 CA 2675.
Court of Appeal of Louisiana, First Circuit.
December 22, 2005.
*76 Kentley R. Fairchild, Houma, Counsel for Petitioner In Reconvention/Third Party Petitioner/Appellee Beau J. Burton.
Glenn B. Adams, Thomas M. Hayes, IV, New Orleans, Counsel for Defendants in Reconvention/Appellants Paul K. Smith and Scottsdale Insurance Company.
Jay J. Luke, Houma, Counsel for Third Party Defendant/Appellee State Farm Mutual Automobile Insurance Company.
Frank Whitely, Metairie, Counsel for Intervenor/Appellee State Farm Fire and Casualty Insurance Company.
Before: CARTER, C.J., DOWNING and GAIDRY, JJ.
DOWNING, J.
Paul K. Smith (Smith) and Scottsdale Insurance Company (Scottsdale) appeal the judgment of the trial court against them for damages resulting from an automobile accident. For the reasons that follow, we affirm in part, reverse in part, and render.

FACTUAL AND PROCEDURAL HISTORY
The automobile accident at issue in this matter occurred on December 3, 1999, on Grand Caillou Road at its intersection with Cemetery Street in Houma, Louisiana. At the time of the accident, Smith was driving a vehicle he had rented from Smith & Associates d/b/a Pro Auto Sales & Rentals (Pro Auto). Smith entered Grand Caillou Road from a private driveway and proceeded in a northerly direction in the right lane. Almost immediately, however, Smith crossed into the left northbound lane in an attempt to make a left turn onto Cemetery Street. As Smith negotiated the turn, his vehicle was struck on the driver's side by a vehicle driven by Beau J. Burton (Burton) and owned by Burton's employer, Jimmy Burton's Air Conditioning and Heating, Inc. (Jimmy Burton).
Just prior to the accident, Burton had been traveling in the left northbound lane on Grand Caillou Road. He was apparently properly in this lane when Smith suddenly cut in front of him. Burton attempted to prevent the accident by crossing the center line into the southbound lanes of Grand Caillou Road, but he was unable to avoid striking the Smith vehicle.
Smith filed suit against Burton, Jimmy Burton, and State Farm Mutual Automobile *77 Insurance Company (State Farm).[1] Burton answered the petition and filed a reconventional demand against Smith. Burton also filed a third-party demand against Pro Auto, Direct General Insurance Company (Direct General) Smith's purported insurer, and Scottsdale, the insurer of the rental vehicle Smith was driving at the time of the accident. Finally, Burton named State Farm as a third-party defendant in its capacity as the uninsured/underinsured motorist insurance carrier providing coverage on the vehicle he was driving at the time of the accident.
Smith's suit was eventually dismissed for failure to comply with the trial court's orders. Direct General also was dismissed from the proceedings after it demonstrated that its policy had been cancelled prior to the accident for non-payment of premiums. In addition, State Farm Fire and Casualty Insurance Company (Fire), Jimmy Burton's workers' compensation insurer, intervened in the proceedings to obtain reimbursement for benefits paid to Burton as a result of the accident. Finally, Scottsdale filed a motion for summary judgment, seeking to limit its liability from $500,000 to $10,000 pursuant to a "two-tier" or "cutback" provision in the policy on the rental car. After a hearing, the trial court denied the motion, and Burton's claims proceeded to trial.
After the trial, the court again denied the motion for summary judgment, refusing to limit Scottsdale's liability under the policy. The court then rendered judgment in favor of Burton and against Smith, Pro Auto, and Scottsdale for general damages in the amount of $40,000.00, past medical expenses in the amount of $11,558.46, and past lost wages in the amount of $4,328.00. In addition, Burton was ordered to reimburse the amount of $12,797.22 to Fire.[2] Judicial interest was awarded on all sums, and costs were assessed at 70% to Smith, Pro Auto, and Scottsdale and 30% to State Farm.
Smith, Pro Auto, and Scottsdale filed a timely motion for new trial, seeking the limitation of Scottsdale's liability under the policy, as well as the dismissal of Pro Auto from the proceedings.[3] The motion also requested that the trial court reapportion fault between Smith and Burton. After a hearing, the trial court granted the motion as to Pro Auto but denied it in all other respects. This appeal by Smith and Scottsdale followed.

SCOTTSDALE'S LIABILITY
On appeal, Scottsdale argues that its policy provides different levels of coverage for different classes of insureds. Specifically, Scottsdale contends that the terms of the policy dictate that Pro Auto and its employees are afforded $500,000 in liability coverage, while those who rent a vehicle from Pro Auto are only afforded $10,000 in liability coverage. In response to this argument, State Farm asserts that the full $500,000 policy limits apply to all insureds because the terms of the policy are ambiguous and must be construed against Scottsdale.
In addition to providing coverage to Pro Auto as the named insured, the Scottsdale *78 policy provides liability coverage in the amount of $500,000 to anyone who uses, with Pro Auto's permission, a covered auto owned, hired, or borrowed by Pro Auto. From this class of permissive users, the policy makes specific exclusions; however, the policy does not exclude those who rent a vehicle from Pro Auto from the general class of permissive users.[4]
In an endorsement effective June 1, 1999, the policy was amended to extend coverage to a rentee and any other person authorized by a rental agreement.[5] This endorsement limited the coverage provided to a rentee under the policy to the minimum required levels of $10,000 per person and $20,000 per accident. Furthermore, the rental agreement between Pro Auto and Smith contains the following clause in reference to liability insurance:
If you have auto liability insurance, we provide no liability insurance. In states where the law requires us to provide auto liability insurance, or if you have no auto liability insurance, we provide auto liability insurance, which is excess to any insurance you may have, under a policy of insurance (the "Policy"). The Policy provides bodily injury and property damage liability coverage with limits of the minimum levels prescribed by the financial responsibility laws of the state where the damage or loss occurs.
There is no dispute that Smith qualifies as a rentee under the terms of the policy. However, State Farm contends that the policy is ambiguous because the clause extending coverage to permissive users of a covered auto does not specifically exclude the rentee from coverage under the general provisions of the policy. According to State Farm, this failure to specifically exclude a rentee from the earlier definition of an insured means that Smith is eligible for coverage under the policy as a rentee, with a $10,000 limit, and as a permissive user, with a $500,000 limit.
The rules concerning the interpretation of insurance contracts have been set forth by the Louisiana Supreme Court in the case of Crabtree v. State Farm Insurance Co., 93-0509 (La.2/28/94), 632 So.2d 736, 741. An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. Id. If the words of the policy are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent, and the agreement must be enforced as written. Id. An insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or so *79 as to achieve an absurd conclusion. Id. The policy should be construed as a whole, and one portion thereof should not be construed separately at the expense of disregarding another. Id. Further, in the interpretation of statutes and contracts, the specific controls the general. Aikman v. Thomas, 2003-2241, 2003-2242, p. 6 (La. App. 1 Cir. 9/17/04), 887 So.2d 86, 90. Documents evidencing the complete contract, such as binders and riders, when executed together for that purpose, must be read together. Id. If after applying the general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer who issued the policy and in favor of the insured. Crabtree, 632 So.2d at 741.
Applying the foregoing principles of contract interpretation to the policy language at issue, we conclude that there are no contradictions or ambiguities in this policy. The policy provides $500,000 in liability coverage to the named insured and those who use a covered auto with the permission of the named insured. Although it is true that Smith used the rental vehicle with Pro Auto's permission, his use of the vehicle falls within the more specific provision applying to rentees. Moreover, we note that interpreting the policy in the manner suggested by State Farm would render meaningless the endorsement applying to rentees. Therefore, we find that Scottsdale's liability in this matter is limited to the minimum levels of $10,000 per person by the "two-tier" provision in the policy.
The trial court's judgment awarded Burton damages totaling $55,886.46. Because Scottsdale's policy is no longer sufficient to cover the full amount of the judgment rendered in this matter, Burton may recover the balance of the judgment from State Farm as his uninsured/underinsured motorist insurer. However, we note that the State Farm policy contains the following limitation of liability in the portion of the policy concerning uninsured motorist coverage:
2. Any amount payable under this coverage shall be reduced by any amount paid or payable to or for the insured:
a. for bodily injury under the liability coverage; or
b. under any worker's (sic) compensation, disability benefits, or similar law. This does not reduce the limits of liability of this coverage.
The policy further provides that there is no coverage under the policy to the extent that it benefits any workers' compensation or disability benefits insurance company.
The trial court found that Fire was entitled to reimbursement as the workers' compensation insurer in the amount of $12,797.22. However, based on the provisions in State Farm's uninsured motorist coverage, we find that Fire is not entitled to reimbursement from the proceeds of the State Farm uninsured motorist policy. See Travelers Insurance Co. v. Joseph, 95-0200, p. 11 (La.6/30/95), 656 So.2d 1000, 1004. However, in accordance with La. R.S. 23:1103 A(1), we find that Fire is entitled to reimbursement of the amounts it actually paid, up to the $10,000 limits of the Scottsdale policy. Therefore, we hereby amend that portion of the judgment granting reimbursement to Fire, limiting such reimbursement to $10,000. We further determine that State Farm is entitled to a credit toward the amount of the judgment against it in the amount of $2,797.22, which reduces the amount it owes under the judgment to $43,089.24.

APPORTIONMENT OF FAULT
In their second assignment of error, Smith and Scottsdale assert that the *80 trial court erred in assessing 100% of the fault for the accident to Smith. Specifically, Smith and Scottsdale contend that the trial court did not properly credit the testimony of a witness to the accident, who allegedly supported Smith's version of the events. Appellants request that this court reapportion the fault between the parties and assign a percentage of fault to Burton.
A trier of fact's determination of the allocation of fault is a factual finding that cannot be overturned in the absence of manifest error. Scarbrough v. O.K. Guard Dogs, XXXX-XXXX, XXXX-XXXX, p. 6 (La.App. 1 Cir. 5/14/04), 879 So.2d 239, 245, writ denied, XXXX-XXXX (La.9/24/04), 882 So.2d 1127. In applying the manifest error standard of review, we must determine not whether the trier of fact was right or wrong, but whether his finding was a reasonable one. Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882-883 (La.1993). Thus, if the factfinder's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even if convinced that had it been sitting as the factfinder, it would have weighed the evidence differently. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 8 (La.7/1/97), 696 So.2d 551, 556.
After a thorough review of the entire record, we see nothing to support a determination that the trial court's allocation of fault in this matter was manifestly erroneous. Therefore, we find this assignment of error to be without merit.

DECREE
For the foregoing reasons, we hereby reverse that portion of the judgment determining that the full $500,000 limits of the policy issued by Scottsdale Insurance Company apply, and we further render judgment limiting the liability of Scottsdale Insurance Company to $10,000 pursuant to the policy. We further amend that portion of the judgment granting the reimbursement claim of State Farm Fire and Casualty Insurance Company to limit its reimbursement to $10,000. Finally, we hereby render judgment against State Farm Mutual Automobile Insurance Company for the total sum of $43,089.24. Legal interest is awarded on all sums from the date of judicial demand until paid. In all other respects, the judgment appealed from is affirmed. The costs of this appeal are to be divided equally between the parties.
AFFIRMED IN PART; AMENDED IN PART; REVERSED IN PART AND RENDERED.
NOTES
[1] State Farm had issued a policy of liability insurance to Jimmy Burton that provided coverage on the vehicle Burton was driving at the time of the accident.
[2] We notice that the judgment contains a discrepancy between the amount of the reimbursement as expressed in numbers and in words. In cases of such a discrepancy, the amount as expressed in words generally prevails.
[3] This part of the motion was unopposed. Burton had apparently filed suit against Pro Auto in the mistaken belief that Pro Auto was Smith's employer.
[4] From the class of permissive users, the policy specifically excludes the following:

(1) The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.
(2) Your employee if the covered "auto" is owned by that employee or a member of his or her household.
(3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.
(4) Anyone other than your employees, partners, a lessee or borrower or any of their employees, while moving property to or from a covered "auto".
[5] "Rentee" is defined as "a holder of a `rental agreement' with you which provides for the holder's use of an `auto' for a period of less than one year." "Rental agreement" is defined as "the `auto' rental contract between you and the `rentee.' This agreement states the limit of liability you are providing the `rentee.'"