# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 24, 2021

Lyle W. Cayce
Clerk

No. 21-30071

Rebekah Goodno, *as personal representative of* the Estate of Timothy Paul Thompson and Danielle Thompson,

*Plaintiff—Appellant*,

*versus*

Endurance American Specialty Insurance Company; Mosquito Control Services, L.L.C.; Anthony P. Sciambra,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:19-CV-11221

Before Higginbotham, Willett, Duncan, *Circuit Judges*.

Per Curiam:*

Rebekah Goodno appeals the district court's grant of summary judgment to defendants Endurance American Specialty Insurance Company

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-30071

("Endurance"), Mosquito Control Services, L.L.C. ("MCS-LA"), and Anthony Sciambra. We affirm.

## I.

Sciambra, driving a truck, rear-ended Timothy Thompson's motorcycle, throwing Timothy into the highway where another vehicle struck and killed him. His widow, Danielle, sued Sciambra, MCS-LA (Sciambra's alleged employer), Travelers Indemnity Company ("Travelers," MCS-LA's primary insurance carrier), and Endurance (MCS-LA's excess insurance carrier).

Danielle Thompson settled with Travelers, MCS-LA, and Sciambra in an agreement that included a *Gasquet* release.[1] The *Gasquet* release specifically released Travelers, MCS-LA, and Sciambra "in all capacities, and any and all other persons, firms, affiliates, parent companies, . . . subsidiaries, corporations, . . . and partnerships for whom they may in any way be responsible . . . ." Danielle Thompson reserved the right to pursue claims against the insurers of MCS-LA and Sciambra, but no other related entity. Danielle Thompson then passed away and Rebekah Goodno was substituted as plaintiff. Goodno continued to pursue claims against Endurance as the excess carrier.

---

[1] Under a *Gasquet* release, plaintiffs can release defendants for all claims except those necessary to pursue insurance claims, including excess insurance. *Gasquet v. Commercial Union Ins. Co.*, 391 So. 2d 466 (La. Ct. App. 1980), *writ denied*, 396 So. 2d 921 (La. 1981).

No. 21-30071

In September 2020, Endurance moved for summary judgment, arguing it did not owe coverage for Goodno's claim. MCS-LA and Sciambra also moved for summary judgment, arguing that the *Gasquet* release would end their liability if the district court granted Endurance's motion. Endurance then moved to join and adopt MCS-LA and Sciambra's motion. The district court granted all three motions.

The corporate structure surrounding MCS-LA is complex but it is relevant to the resolution of this case. There are two entities with the name "Mosquito Control Services, LLC." The first Mosquito Control Services, LLC is a Delaware entity ("MCS-DE"). MCS-DE has no direct operations but controls certain financial accounts and contracts on behalf of eleven wholly-owned, subsidiary LLCs. Most of the subsidiary LLCs have names tied to the locations where they perform mosquito spraying operations, such as "Mosquito Control of Jackson County, LLC." The second Mosquito Control Services, LLC is one of the eleven subsidiaries and is a Louisiana entity ("MCS-LA"). MCS-LA has employees and direct operations in Louisiana. MCS-LA is the named insured on the Travelers policy, the defendant in this case, and the party which entered into the *Gasquet* release. Mississippi Mosquito Control, LLC ("MMC") and Mosquito Control of Hancock County, LLC ("Hancock") are also MCS-DE subsidiaries.

## II.

We review *de novo* a district court's grant of summary judgment.[2]

---

[2] *De Jongh v. State Farm Lloyds*, 664 F. App'x 405, 408 (5th Cir. 2016) (per curiam).

No. 21-30071

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] "The moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."[4] A district court's grant of summary judgment "will be affirmed by this court when the nonmoving party fails to meet its burden to come forward with facts and law demonstrating a basis for recovery that would support a jury verdict."[5] A want of insurance coverage should not be found on summary judgment unless no reasonable interpretation of the policy footed on the undisputed facts which could support a finding of coverage.[6]

## III.

Goodno brings three arguments. First, she argues that all the related corporate entities should be treated as one company such that MCS-LA, and indirectly Endurance, is liable for the accident. Second, Goodno argues that even if the entities were separate, the Endurance policy covers the truck driven by Sciambra. Third, Goodno argues that two additional provisions create coverage. We reject each of these arguments and affirm the district court's denial of coverage.

---

[3] Fed. R. Civ. P. 56(a).

[4] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations removed).

[5] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1071 (5th Cir. 1994) (per curiam).

[6] *Cochran v. B.J. Servs. Co. USA*, 302 F.3d 499, 503 (5th Cir. 2002) (reviewing a grant of summary judgment in a Louisiana insurance dispute).

No. 21-30071

## A.

Goodno first argues that the companies were all combined under one management structure, such that MCS-LA should be considered the parent entity; but Goodno faces a significant hurdle: the *Gasquet* release did not reserve claims against the potential defendants that were most likely to be liable. Danielle Thompson, and thus Goodno, released all affiliates and parent companies related to MCS-LA from potential claims, effectively releasing MCS-DE, the parent company of MCS-LA. Thompson also released MMC and Hancock, affiliates of MCS-LA. The *Gasquet* release only preserved Goodno's claims for which MCS-LA or Sciambra could be held liable.

While the parties below conflated MCS-LA and MCS-DE, they are distinct corporate entities. On this record there were distinct roles for each entity within the corporate structure that belie treating MCS-LA as the parent entity. Goodno has not presented evidence for this Court to disregard the corporate structure.

MCS-DE has localized subsidiaries for two purposes. The first is to have separate payroll accounting and performance evaluation of the different entities. The second is that having local entities helps in the bidding process for municipal contracts and in securing licensing. Each subsidiary has assets and locally licensed employees who perform local contracts. Goodno presents no evidence that the workforces of the subsidiaries were pooled such that the subsidiaries were functionally divisions of a single entity rather than independent entities.

No. 21-30071

Goodno argues that MCS-LA was the parent entity because "Mosquito Control Services, LLC" appeared on Sciambra's pay stub. This assertion oversimplifies the payroll system, ignoring the two separate entities with the MCS name. While MCS-DE ran a unified payroll system from which its subsidiaries paid employees, each subsidiary maintained an independent payroll for accounting purposes. The payroll system belonged to MCS-DE and the pay stub came from an account controlled by MCS-DE, not MCS-LA. Sciambra was listed on the MMC payroll, not the MCS-LA payroll.

Goodno also argues that the other subsidiaries were named insured parties on the contract and that Endurance is therefore liable. This argument fails for two reasons. First, the *Gasquet* release released the affiliated entities. Even if the other entities were insured by the Endurance policy, Goodno reserved no claim against them. Second, Goodno does not rebut the evidence presented by Endurance suggesting that only MCS-LA and one other MCS-DE subsidiary were covered. Endurance points to a provision in the policy which specifically endorses a Florida subsidiary of MCS-DE, also a sibling company of MCS-LA. If the policy had been held by MCS-DE rather than MCS-LA, the endorsement would have been unnecessary. Other subsidiaries were on a list provided to the insurance broker, Willis Towers Watson, including MMC and Hancock. But these entities do not appear in the actual insurance contract documentation. MCS-DE, MMC, and Hancock were not insured.

Any claim by Goodno against Endurance must be one for which MCS-LA was liable. Even if Hancock and MMC were named insured under the

6

No. 21-30071

policy due to the schedule, claims against them were not reserved by the *Gasquet* release. The complaint specifically named the Louisiana entity and Goodno reserved claims only against MCS-LA and Sciambra under the release, so only claims against MCS-LA are potentially valid.

**B.**

Goodno next argues that the truck driven by Sciambra was a "Covered 'Auto'" under the policy. This argument fails because there is no reasonable interpretation of the policy that here supports coverage under the undisputed facts.

The Endurance excess insurance policy provides coverage when the primary insurance policy coverage provided by Travelers has been exhausted. The Endurance policy follows-the-form of the underlying Travelers policy, so the terms of the Travelers insurance contract govern this dispute.[7]

Under the Travelers policy, "[c]overage applies only to those 'Autos' shown as Covered 'Autos.'" The Travelers policy provides several defined categories for autos under which differing levels of coverage apply. Endurance correctly contends that the truck does not fall into any applicable category under the policy.

The broadest category is Category 1, which covers "Any 'Auto.'"

---

[7] Under a "follow-the-form" clause, the excess carrier or reinsurer provides coverage consistent with the primary policy as written. *See Bayou Steel Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 642 F.3d 506, 509 (5th Cir. 2011).

No. 21-30071

Goodno argues that "Any 'Auto'" covers any conceivable vehicle because the category definition lacks limiting language. That view is an unreasonable interpretation of the contract, inconsistent with how Louisiana courts interpret insurance policy terms.[8] Under Louisiana law, "[a]n insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion."[9] Further, "[a]n insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Civil Code."[10] The Louisiana Civil Code instructs that "[i]nterpretation of a contract is the determination of the common intent of the parties."[11]

When looking at the listed categories, it seems clear that "Any 'Auto'" is intended to encapsulate any auto that could fall into the narrower categories subsequently described in the policy. The "Any 'Auto'" category is used to place an overall cap on the most the insurance carrier will pay for all claims arising out of any one accident while the narrower categories describe specific limitations on coverage depending on the type of claim, such as personal injury protection or towing services. This interpretation is

---

[8] The parties do not challenge that Louisiana law governs the interpretation of the insurance contract as the law of the forum state.

[9] *Crabtree v. State Farm Ins. Co.*, 632 So. 2d 736, 741 (La. 1994).

[10] *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 763 (La. 1994).

[11] La. Civ. Code Ann. art. 2045 (1984).

No. 21-30071

reasonable as the other categories collectively address virtually any circumstance for which an insured might want coverage. Thus, Category 1 covers "Any 'Auto'" that MCS-LA owned, borrowed, leased, hired, rented, or used in the course of its business. It cannot be that MCS-LA would purchase insurance for any conceivable auto, including autos with which it has no connection, as Goodno's interpretation suggests. Goodno argues the truck driven by Sciambra appeared on a list given to the underwriters, but this list does not appear in the actual insurance policy. Further, the insurance cards attached to the policy do not list a vehicle identification number. Instead, the cards list "Fleet" suggesting any covered vehicle must have a connection to MCS-LA such that the vehicle could be considered part of its fleet. For coverage to exist here, the truck must fall into one of the narrower, enumerated categories to be a "Covered 'Auto.'"

There are three potential categories for the truck in question, designated as Categories 2, 8, and 9 on the list in the Travelers policy. None of these categories apply to the truck. Category 2 describes "Owned 'Autos' Only," limiting certain coverage to autos directly owned by the named insured. MCS-LA was not the legal owner of the automobile. In Louisiana, "[t]he certificate of title constitutes *prima facie* proof of ownership."[12] The title owner of the truck was Hancock, not MCS-LA. Goodno argues that Hancock was dormant for several years before the accident and had not been

---

[12] *Lambert v. Ray Brandt Dodge, Inc.*, 31 So. 3d 1108, 1112 (La. Ct. App. 2010), *writ denied*, 34 So. 3d 293 (La. 2010).

responsible for performing maintenance on the truck, so Hancock should not be considered the true legal owner of the truck. Perhaps, but even if Hancock were not the legal owner due to its dormant status, MMC was the entity using the truck in its operations, not MCS-LA. MMC paid for the truck's fuel bill through a fleet account listed in its name. Because the settlement released Hancock and MMC, their potential liability cannot support Goodno's claim.

Goodno also argues that the truck had "Mosquito Control Services" printed on the side, establishing MCS-LA's ownership under Category 2. Within the corporate structure, there are several other subsidiaries with names derived from "Mosquito Control Services," including Mosquito Control Services of Georgia, LLC and Mosquito Control Services of Florida, LLC. Goodno fails to rebut the evidence presented by Endurance, the title document and fuel account that point to either Hancock or MMC as the owner. MCS-LA was not the owner as described in Category 2.

Category 8 describes "Hired 'Autos' Only"; this category includes any auto which the insured leases, hires, rents or borrows. There is no evidence that MCS-LA hired, leased, rented, or borrowed the truck from Hancock. The truck was not being used in MCS-LA's Louisiana operations. The truck was being used in MMC's operations in Mississippi, indicating that MMC was borrowing the truck from Hancock, not MCS-LA. Goodno argues that the transfer of the truck from Hancock to MMC was done at the direction of MCS-LA's officers. Even accepting that as true, MCS-LA would not be the "borrower," that role would fall on the MMC as the transferee and user of the truck.

No. 21-30071

Finally, Category 9 describes "Non-owned 'Autos' Only," which is any auto that the insured does not own, lease, hire, rent, or borrow, but is used in connection with the insured business. Goodno argues that the truck was used in connection with MCS-LA's business because Sciambra was an employee of MCS-LA. Endurance argues that Sciambra was an independent contractor, not an employee. The focus on Sciambra's employment status is misplaced. The applicability of Category 9 does not turn on whether Sciambra was an independent contractor or employee, but rather on the identity of his employer.

Under Louisiana law, "[t]he essence of the employer-employee relationship is the right to control . . . . The primary factors evidencing the right to control are: (1) selection and engagement, (2) payment of wages, (3) power of dismissal, and (4) power of control."[13]

MMC had sufficient control over Sciambra to establish that Sciambra worked for MMC. MMC paid Sciambra wages. Sciambra oversaw MMC's mosquito spraying operations in Mississippi. MMC paid for Sciambra's fuel. Sciambra lived in Mississippi and commuted to the MMC office in Gautier, Mississippi. MMC recognized Sciambra as its 1099 contractor. Sciambra testified that MMC was his employer.

Much of this same evidence suggests that Sciambra was not controlled by MCS-LA. He did not work at the MCS-LA office in Metairie, Louisiana.

---

[13] *Knoten v. Westbrook*, 193 So.3d 380, 390, (La. Cir. App. 2016), *writ denied*, 208 So. 3d 890 (citing *Hillman v. Comm-Care, Inc.*, 805 So.2d 1157, 1162 (La. 2002)).

Sciambra was not on the MCS-LA payroll. MCS-LA did not obtain any direct benefit from Sciambra's work as he was only involved in MMC's mosquito spraying operations and local contract.[14] Regardless of whether Sciambra was an employee or independent contractor, it is clear that he worked for MMC, not MCS-LA.

The best evidence favoring MCS-LA as Sciambra's employer is murky. On a corporate organizational chart, Sciambra reported to people who reported to Steve Pavlovich, who was the CEO of MCS-DE and all its subsidiaries, including MCS-LA and MMC. So Pavlovich had ultimate control, but Goodno does not show why Pavlovich's control would not be as CEO of MMC, Sciambra's direct employer, or as CEO of MCS-DE, the parent organization which benefitted from Sciambra's work for MMC. Sciambra also received a termination letter from a "Mosquito Control Services, LLC" but the letter did not distinguish whether this was MCS-DE or MCS-LA. This ambiguous letter alone is insufficient to support a reasonable inference that Sciambra had an employment relationship with MCS-LA when viewed in light of the evidence presented by Endurance.

Endurance presented evidence that Sciambra worked for MMC, not MCS-LA, either as an employee or independent contractor. Therefore, Sciambra's actions were not in connection with MCS-LA's business and the

---

[14] *See Morgan v. ABC Mfr.*, 710 So.2d 1077, 1078–80 (La. 1998) (discussing how two employers could be liable for a single employee's conduct where both employers exert contemporaneous control and receive a benefit from that employee's work).

No. 21-30071

truck does not fall under Category 9. The truck was not a "covered auto" under the language of the policy.

## C.

Goodno's final argument is that Sciambra was insured under the "Business Auto Extension Endorsement – Louisiana" ("Louisiana Extension") or "Who Is An Insured" provisions of the Travelers policy. Endurance argues that Goodno did not preserve this argument on appeal and that even if Goodno did not waive it, the provisions do not create coverage.

Generally, "[t]his court will not consider arguments first raised on appeal . . . ."[15] Arguments not raised before the district court are waived unless the party can show the extraordinary circumstances that the issue involved is a pure question of law and a miscarriage of justice would result from the court's failure to consider it.[16] As Goodno did nothing to bring the district court's attention to the Louisiana Extension, this argument is waived. Regardless, waiver produces no untoward result.

The Louisiana Extension appears in a series of policy modifications for various states. One relevant provision of the Louisiana Extension extends coverage to "[a]ny 'employee' . . . using a covered 'auto' you don't own, hire, or borrow in your business or personal affairs." Goodno argues this

---

[15] *Est. of Duncan v. Comm'r of Internal Revenue*, 890 F.3d 192, 202 (5th Cir. 2018).

[16] *State Indus. Prods. Corp. v. Beta Tech. Inc.*, 575 F.3d 450, 456 (5th Cir. 2009).

creates coverage, but it does not. Again, Sciambra was not an employee of MCS-LA.

Goodno also argues that the Louisiana Extension should apply rather than the policy's Mississippi Changes, and that the Louisiana extension applies to all of MCS-LA's vehicles. Under Louisiana law, "[i]f the words of the [insurance] policy are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and the agreement must be enforced as written."[17] It would be unreasonable to apply the Louisiana Extension beyond Louisiana when the title of the endorsement clearly and explicitly indicates this section applies to Louisiana. Even if the title were not dispositive, other provisions suggest the Louisiana Extension should be read as its title suggests. Immediately preceding the Louisiana Extension is a generally applicable endorsement that alters the coverage across the entire policy and immediately after the Louisiana Extensions are a series of other state-specific endorsements. If the insured and insurance carrier intended to implement changes to coverage that would govern a Mississippi vehicle, they would have implemented them in either the general endorsement or in a Mississippi-specific endorsement. The facts indicate that the Louisiana Extension does not apply to this truck. The truck was registered in Mississippi, used in Mississippi, and driven by a Mississippi LLC's employee. The truck was not owned or possessed by MCS-LA, nor was it used or garaged in Louisiana. Goodno's argument

---

[17] *Crabtree*, 632 So. 2d at 741 (citing La. Civ. Code Ann. art. 2046 (1984)).

regarding the Louisiana Extension was waived and it is no grave miscarriage of justice to decline to consider it further.

Alternatively, Goodno did not waive the "Who is An Insured" provision, having previously argued that the employment status of Sciambra made him an insured. Endurance itself referred to this provision in its arguments for summary judgment. The "Who Is An Insured" provision is an integral portion of the core Travelers policy documentation. Goodno argues the second category of the provision here provides coverage. This provision covers the primary named insured as well as "[a]nyone else while using with your permission a covered 'auto' you own, hire, or borrow . . . ." For this language to apply to Sciambra, two circumstances are needed. First, Sciambra would have needed MCS-LA's permission to use the truck, which Goodno argues he had. Second, the truck would need to have been a "covered auto" owned, hired, or borrowed by MCS-LA. Goodno fails under the second prong; the truck was not a covered auto, as explained in Section III.B. The "Who Is An Insured" provision did not here create coverage or alter the outcome of this case.

## IV.

There is no viable claim against MCS-LA and all of its affiliates were previously released by the plaintiff. There is no viable claim against Endurance. We affirm the district court's grant of summary judgment to Endurance. The grant of summary judgment to Sciambra and MCS-LA and the dismissal of claims against them were also proper. We affirm the district court's granting of all three motions.