# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## CA 05-1547 consolidated with CA 05-1548

**MARY WILLIAMS, ET AL.**

**VERSUS**

**VENSON R. AYMOND, ET AL.**

**Consolidated with**

**PAUL DARREN WILLIAMS, ET AL.**

**VERSUS**

**STATE FARM MUTUAL AUTO INS. CO. AND VENSON R. AYMOND**

**********

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2003-4786-A, c/w 2003-5125A
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE

**********

**JOHN D. SAUNDERS**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, John D. Saunders, and Marc T. Amy, Judges.

**AFFIRMED IN PART, REVERSED IN PART, AMENDED IN PART, AND RENDERED.**

**John Taylor Bennett**
**Bennett Law Office**
**Post Office Box 275**
**Marksville, LA 71351**
**(318) 253-4631**
**Counsel for Plaintiffs/Appellees:**
**Mary Williams**
**Eric Williams**
**Chastity Williams**

**Carey J. Guglielmo**
**Guglielmo, Marks, Schutte, Terhoeve, & Love**
**320 Somerulos Street**
**Baton Rouge, La 70806**
**(225) 387-6966**
**Counsel for Secondary Defendant/Appellant:**
**State Farm Mutual Auto Ins. Co.**

**David A. Hughes**
**Hughes & LaFleur**
**P. O. Box 1831**
**Alexandria, LA 71309-1831**
**(318) 443-4090**
**Counsel for Defendant/Appellant:**
**Venson R. Aymond**

**SAUNDERS, Judge.**

This cause of action arises from a vehicle accident wherein the driver of one of the vehicles was killed. Two sets of the decedent's heirs brought a wrongful death claim against the defendant and his insurer. The passenger riding on the decedent's tractor also brought an action for the personal injuries he sustained against the defendants. All claims were consolidated into one suit.

One set of wrongful death plaintiffs entered into a stipulation that their "damages" were not in excess of $50,000 each. The other set of wrongful death plaintiffs entered into a stipulation that their "cause of action" was not in excess of $50,000 each.

Plaintiffs then filed a motion for partial summary judgment that the policy limits applicable in the case was that of the $300,000 "each accident" limit as opposed to the $100,000 "each person" limit. The trial judge granted this motion.

In the first part of a bifurcated trial, the trial court found the defendant driver 85% at fault and the plaintiff driver 15% at fault for the accident. After the first part of the bifurcated trial took place, both sets of wrongful death plaintiffs moved to withdraw their $50,000 stipulations. At the hearing on the motions to withdraw stipulations, the trial court allowed the litigants to enter into a new stipulation. Unfortunately, the litigants disagree as to what they stipulated.

After this new stipulation, the trial judge had the damages trial wherein the plaintiffs were awarded various damages against the defendant and his insurer. The trial judge gave awards over $50,000, discounted the awards for the decedent's 15% fault, then applied the $50,000 cap as this was his understanding of the new stipulation.

Defendant and his insurer appealed the judgment granting the plaintiffs' partial

motion for summary judgment, the judgment for the allocation of fault to the drivers, the judgment assessing damages and the calculation method used by the trial judge with respect to the stipulations entered into by the parties.

We affirm in part, reverse in part, amend in part and render.

**FACTS AND PROCEDURAL HISTORY:**

On February 14, 2003, at approximately 6:27 PM, Mr. Venson Aymond ("Aymond") was driving with his wife, Florence Aymond, from his home to visit his sister. While traveling south on Louisiana Highway 107, in a no passing zone, Mr. Aymond rear-ended a large, red tractor driven by Mr. Nelson Williams, Jr. ("Williams"). Riding on the tractor driven by Nelson Williams, Jr. was his nephew, Ricardo Williams.

Mr. Aymond testified that he had his headlights illuminated on the bright setting, and that he did not see the tractor in front of him before the accident. He testified that it appeared in front of him as if a "wall dropped."

Ricardo Williams testified that the tractor he was riding on did not have any of its lights illuminated, but that he could see the Aymond vehicle. He also testified that he signaled the Aymond vehicle to pass around the Williams tractor, and that the Aymond vehicle pulled into the opposite lane to attempt to pass them when the accident took place.

Both plaintiffs and defendants put forth expert testimony. Accident reconstruction experts from both sides, as well as the investigating state trooper, agreed that the point of impact put the Aymond vehicle in the opposite lane of travel. The opposing experts also agreed that Mr. Aymond should have seen the tractor in front of him under the conditions present on the day of the accident, even if it was dark, due to the distance one can see when his or her bright lights are illuminated.

Mr. Aymond's medical records showed that he had poor vision prior to the accident. Mr. Aymond had failed the vision portion of his driver's test several times prior to the accident when he last took his driver's test to get his license.

There was conflicting testimony as to why the Aymond vehicle was in the opposing lane of travel. There was also conflicting testimony as to whether the reflectors on the rear of the Williams tractor was sufficient under Louisiana Law. There was, however, no conflict in the testimony that the Williams tractor did not have a "slow moving" warning reflector as required by Louisiana Law.

Mrs. Aymond, a passenger in the Aymond vehicle, testified that she did not see the tractor in front of them because she was not paying attention to the road in front of them.

As a result of the injuries he sustained in the accident, Mr. Nelson Williams, Jr. died. Nelson Williams, Jr. was the husband of Mary Williams and the father of Gwendolyn F. Williams, Paul Williams, Martha Williams, Mary Williams, Eric Williams and Chastity Williams.

The accident and subsequent death of Nelson Williams, Jr. gave rise to two wrongful death suits and one personal injury claim brought by Eunice Williams, individually, and on behalf of her minor son, Ricardo Williams. All of the claims were consolidated into one suit.

Plaintiffs Gwendolyn F. Williams, Paul D. Williams and Martha Williams stipulated that each one of their damages did not exceed $50,000. The plaintiffs, Mary Williams, Eric Williams and Chastity Williams entered into a stipulation that their respective cause of action did not exceed $50,000. All Plaintiffs were granted a motion for partial summary judgment wherein they asserted that the $300,000 "each

3

accident" limit applied instead of the $100,000 "each person" limit of the State Farm liability policy Mr. Aymond had in effect at the time of the accident.

The judgment for first stage of the bifurcated trial attributed 85% of the fault for the accident to the negligence of Mr. Aymond, and attributed 15% of the fault to the negligence of Nelson Williams, Jr.

After the fault portion of the trial, the wrongful death plaintiffs moved to withdraw their stipulations regarding the $50,000 limits to their cause of action or damages respectively. At the hearing for their motion to withdraw, all of the plaintiffs, including Eunice Williams, individually, and on behalf of her minor son, Ricardo, entered into a new stipulation regarding limits to their recovery.

A reading of the record indicated that there was much confusion about what the parties agreed to in the new stipulation. The wrongful death plaintiffs were focused on wording a stipulation wherein they would not limit their recovery to a collective $50,000. The defendants were focused on wording a stipulation wherein they would not agree to the $300,000 "each accident" limit as opposed to the $100,000 "each person" limit. Neither party indicated a concern as to the method of calculation that the trial judge could use to fix the awards of the plaintiffs.

The trial court then awarded damages to each wrongful death claimant and to Eunice Williams, individually, and on behalf of Ricardo Williams, in the following amounts:

> Mary Williams, $50,000.00 ($200,000.00 minus 15% subject to the $50,000.000) exclusive of interest and cost stipulation in suit number 2003-4786-A, and court cost.
>
> Eric Williams, $50,000.00 ($75,000.00 minus 15% subject to the $50,000.00) together with legal interest from the date of judicial demand in Suit no. 2003-4786-A and court cost;

4

Chastity Williams, $50,000.00 ($150,000.00 minus 15% subject to the $50,000.00) together with legal interest from date of judicial demand in suit no. 2003-4786-A and court cost;

Paul Darren Williams, $42,500.00 ($50,000.00 minus 15%) together with legal interest from date of judicial demand in suit no. 2003-5125-A, and court cost;

Gwendolyn Francis Williams, $50,000.00 ($100,000.00 minus 15%) together with legal interest from date of judicial demand in Suit No. 2003-5125-A and court cost;

Martha Yvette Williams, $42,500.00 ($50,000.00 minus 15%) together with legal interest from date of judicial demand in suit no. 2003-5125-A, and court cost;

Eunice Williams, individually, and on behalf of her minor son, Ricardo Williams, $43,346.48 ($50,995.86 minus 15%) together with legal interest from date of judicial demand in Suit No. 2003-5125-A, and court cost;

The trial court also included in its judgment that the liability of defendant State Farm was limited to $300,000 plus legal interest and court cost amongst other awards that are not on appeal.

Defendants appealed the judgment granting the plaintiffs' partial motion for summary judgment regarding the applicability of the "each accident" limit as opposed to the "each person" limit in their policy, the judgment for the allocation of fault to Mr. Aymond, the amounts awarded in the judgment for the damages of each plaintiff wherein as assessment was over $50,000, the amounts awarded in the judgment to three of the plaintiffs as excessive, and the calculation method used by the trial judge with respect to the stipulations entered into by the parties.

We affirm in part, reverse in part, amend in part and render.

**ASSIGNMENTS OF ERROR:**

1.  Was the trial court manifestly erroneous or clearly wrong in allocating 85% of the fault to Venson Aymond and 15% of the fault to Nelson Williams, Jr. for their February 14, 2003, vehicle accident?

2.  Did the trial court err in allowing the plaintiffs to withdraw stipulations that

5

were agreed to before the trial on allocation of fault and enter into a new stipulation after the trial for allocation of fault and before damages were assessed where there were differing understandings of the effects of that new stipulation?

3.     Did the trial court err in its method of calculating damages by awarding more than $50,000 to plaintiffs before those awards were reduced by the allocation of fault to Nelson Williams, Jr. considering the $50,000 stipulation agreed to by the plaintiffs and abuse its discretion by awarding excessive damages to Paul, Martha and Eunice Williams, individually, and on behalf of Ricardo Williams?

4.     Did the trial court err in granting a motion for partial summary judgment for the application of the $300,000 "each accident" policy limit as opposed to the application of the $100,000 "each person" policy limit for the collective recovery of the plaintiffs?

## ASSIGNMENT OF ERROR #1:

Defendants first assert that the trial court was manifestly erroneous or clearly wrong in finding that Aymond had any fault in the accident. We find no basis for this assertion.

A trial judge's findings of fact will not be disturbed unless they are manifestly erroneous or clearly wrong. *Stobart v. State, through Dep't of Transp. & Dev.,* 617 So.2d 880 (La.1993). "Absent 'manifest error' or unless it is 'clearly wrong,' the jury or trial court's findings of fact may not be disturbed on appeal." *Sistler v. Liberty Mut. Ins. Co.,* 558 So.2d 1106, 1111 (La.1990). "If the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* at 1112.

In Louisiana jurisprudence applying La.R.S. 32:81, there is a rebuttable presumption that a following motorist involved in a rear-end collision is negligent in causing the accident. To overcome this presumption, the following motorist must prove that he or she maintained a proper lookout. *Dugas v. Derouen*, 01-1397

6

(La.App. 3 Cir. 7/3/02), 824 So.2d 475, *writ denied* 02-2131 (La. 11/15/02), 829 So.2d 426.

In order to fully exculpate Aymond in this accident, defendants would have to show that the evidence in the record was such that there was no way a reasonable person could have found that Aymond did not maintain a proper lookout.

While there is evidence in the record that Aymond was not solely at fault for causing the accident, there is also evidence that Aymond failed to maintain a proper lookout for the vehicle in front of him. There is testimony from two experts on accident reconstruction that Aymond, with his bright lights illuminated, should have seen Williams and could have avoided the accident.

Aymond attempts to bolster his zero fault position by citing cases from the time when Louisiana barred recovery due to contributory negligence. Aymond cites *Morgan v. Toups-Cook Truck Sales, Inc.*, 194 So.2d 366 (La.App. 1 Cir. 1966), *Goudeau v. Roadway Express, Inc.*, 299 So.2d 915 (La.App. 3 Cir. 1974), *McCoy v. Franklin Parish Police Jury*, 414 So.2d 1369 (La.App. 2 Cir. 1982) and *Fontenot v. Lafleur*, 124 So.2d 607 (La.App. 3 Cir. 1961). Louisiana has since gone to a comparative fault system of negligence. These cases, while still pertinent on some points, are not relevant to the case at bar. A finding of any fault on the part of a certain litigant in those cases cited by the defendants would have precluded that litigant from any recovery under Louisiana's old contributory negligence system. Just because a litigant in the cases cited above was not able to recover, does not mean that the other litigant was free from fault. Under the current system, the finding of some fault attributable to the plaintiff does not act as a bar on recovery. Therefore, we find the assertion that Aymond was free from liability in this accident, based upon a theory

7

of contributory negligence, is without merit.

Next, defendants contend that the trial court erred in finding Aymond overwhelmingly responsible for the accident by allocating 85% of the fault to his negligence. They hinge their argument on their assertion that Williams' violation of motor vehicle lighting statutes was just as much a reason the accident took place as any negligence on the part of Aymond. We disagree.

The Louisiana Supreme Court, in *Duncan v. Kansas City Southern Railway Co.*, 00-66, p. 10-11 (La.10/30/00), 773 So.2d 670, 680-81, set forth the standard for reviewing comparative fault determinations as follows:

> This Court has previously addressed the allocation of fault and the standard of review to be applied by appellate courts reviewing such determinations. Finding the same considerations applicable to the fault allocation process as are applied in quantum assessments, we concluded "the trier of fact is owed some deference in allocating fault" since the finding of percentages of fault is also a factual determination. *Clement v. Frey*, 95-1119 (La.1/16/96); 666 So.2d 607, 609, 610. As with other factual determinations, the trier of fact is vested with much discretion in its allocation of fault. *Id*.

Therefore, a trier of fact's allocation of fault is subject to the manifestly erroneous or clearly wrong standard of review. The Louisiana Supreme Court addressed what factors to consider when attempting to review an allocation of fault in *Watson v. State Farm Fire and Cas. Ins. Co.*, 469 So.2d 967, 974 (La.1985):

> [V]arious factors may influence the degree of fault assigned, including:
> (1)[W]hether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.

These factors also guide an appellate court's determination as to the highest or lowest percentage of fault that could reasonably be assessed to each party. *Clement*, 666 So.2d at 607**.** Thus, the *Clement* decision dictates that the allocation of fault is not an exact science, nor is it the search for a precise ratio. Rather, much like that of quantum assessment, allocation of fault is the finding of an acceptable range and any allocation by the trier of fact within that range cannot be disturbed under the manifest error standard of review. Therefore, in order for this court to disturb the trial court's allocation of fault, the defendants must show that, based on the evidence in the record, no reasonable person could have allocated the fault in the manner that the trial judge did in this case.

We find that there is evidence in the record for the trial court to find that Aymond was 85% at fault for the accident in question. Aymond rear-ended Williams. The accident reconstruction experts retained by both parties testified that Aymond should have seen Williams in front of him and could have avoided the accident. Further, there is testimony from Ricardo Williams that it was not yet dark and that he could see Aymond coming behind them. Thus, it is within reason for the trial court to find that Aymond's failure to keep a proper lookout was the overriding factor in causing the collision and that Aymond had the last, clear chance to avoid this accident.

There is also evidence that Aymond was attempting to pass Williams illegally. Ricardo Williams testified that from his vantage point, Aymond was attempting to pass them in a no-passing zone. This testimony is corroborated by the testimony of the plaintiffs' expert and the testimony of the investigating state trooper

that the point of impact puts Aymond's vehicle in the oncoming traffic lane. Moreover, Aymond testified that he now knows that where the point of impact took place, there is a double yellow line indicating a no-passing zone. While the reason Aymond's vehicle was in the oncoming traffic lane is the subject of contention, it is not unreasonable for the trial court to find that Aymond was attempting to illegally pass Williams. Thus, the trial court could reasonably find that Aymond's negligence, while attempting to illegally pass Williams, was the primary component in causing the accident.

Finally, there is evidence that Aymond was visually impaired. The medical records of Aymond indicate that he had poor vision. There is also evidence that Aymond failed the vision test administered in order to get his driver's license on more than one occasion during the time leading up to the accident. It is reasonable for the trial court to attribute Aymond's testimony, that the Williams vehicle appeared out of nowhere, to his poor vision. Therefore, it is within reason for the trial court to find that Aymond's visual impairment was a major reason the accident took place.

We find that the trial court allocation of fault in the case at bar is reasonable despite Williams' violation of motor vehicle lighting statutes. The deference given to the trial court in allocation of fault coupled with the plethora of evidence in the record available to the trial court for it to cast Aymond overwhelmingly at fault necessitates this court to find that the defendants' assignment of error is without merit. As such, we affirm the trial court's allocation of fault in its judgment.

**ASSIGNMENT OF ERROR #2:**

Prior to the trial to allocate fault, plaintiffs, Paul, Gwendolyn and Martha

10

Williams agreed to a stipulation with defendants that their "damages" were not in excess of $50,000. At that same time, plaintiffs, Mary, Chastity and Eric Williams entered into a stipulation with the defendants that their "cause of action" was not in excess of $50,000. In light of these stipulations, defendants agreed to waive their right to a jury trial. After the trial to allocate fault, on motion of the wrongful death plaintiffs, these stipulations were allowed to be withdrawn and then a new stipulation was entered into by all of the parties on July 15, 2005, in open court. First, we find that the trial judge erred in allowing these stipulations to be withdrawn.

The Louisiana Supreme Court stated that "[a] stipulation has the effect of a judicial admission or confession...." *R.J. D'Hemecourt Petroleum v. McNamara*, 444 So.2d 600, 601 (La.1983), *cert. denied*, 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 39 (1984)(Footnote Omitted). "A stipulation may be revoked on the basis of 'error of fact' when there is evidence of such error." *Dolsen v. City of New Orleans*, 559 So.2d 50, 51 (La.App. 4 Cir. 1990), citing *Lockette v. Greyhound Lines, Inc.* 817 F.2d 1182 (5th Cir. 1987). Whether a judicial confession is correct cannot be addressed when one party had already relied on it to their detriment. *Lewis v. Willamette Indus., Inc.*, 499 So.2d 506 (La.App. 2 Cir.1986), *writ denied*, 501 So.2d 197 (La.1987), citing *Crawford v. Deshotels*, 359 So.2d 118 (La.1978).

Therefore, in order for the plaintiffs to properly be allowed to withdraw their stipulations, they needed to demonstrate that there was an error of fact that they relied upon to enter into those stipulations. They did not do so.

If we were to find that the policy in question was susceptible to an interpretation that would allow for a greater recovery than originally thought by the wrongful death plaintiffs, then there would be legal foundation for a finding of an

error of fact. However, as we discuss in Assignment of Error #4, this policy's provisions relating to the amount of coverage available to the wrongful death plaintiffs is clear, and thus the "error of fact" does not materialize. Because we do not find that there was any error of fact on the part of the wrongful death plaintiffs, it follows, therefore, that their motion to withdraw was not properly founded.

Moreover, the defendants in this case detrimentally relied on the original stipulations. They waived their right to a jury trial in exchange for having a limit on what the plaintiffs could recover. They made this agreement to limit their exposure to $50,000 for each plaintiff if Aymond was found to be 100% at fault for the accident. Once it was determined by the trial judge that Aymond was only 85% at fault, a change in the stipulations would severely prejudice the defendants. To do so offends the notion of fair play. While there is evidence that the trial judge offered to retry the case with a jury on July 15, 2005, to do so would have been judicially inefficient and very costly for both sides. Therefore, because there is no evidence of any error of fact in the record by the plaintiffs and because the defendants detrimentally relied upon the stipulations, we find that the trial judge committed error in allowing the plaintiffs' stipulations to be withdrawn and we reinstate the original stipulations agreed to by the parties.

Next, we also find that the trial judge erred in finding that the July 15, 2005, stipulation agreed to in open court was in effect at the time he assessed damages. There are very different contentions as to what exactly was agreed upon on July 15, 2005. A stipulation has the effect of a contract between the parties and as such, we look to basic contract principles to determine what was agreed upon that day.

"A contract is an agreement by two or more parties whereby obligations are

created, modified, or extinguished." La.Civ.Code art. 1906. The four requirements for a contract are capacity, consent, a certain object for the contract and a lawful purpose for the contract. La.Civ.Code art. 1918; La.Civ.Code art. 1927; La.Civ.Code art.1966; La.Civ.Code art.1971; *First Nat. Bank of Shreveport v.Williams*, 346 So.2d 257 (La.App. 3 Cir. 1977). "A contract is incomplete unless there be a meeting of the minds of the parties upon the common ground of a mutual understanding of facts and of subject-matter." *Jones v. Janes*, 101 So. 116, 117 (La.1924).

At the hearing for the motion to withdraw the old stipulations, the parties agreed in open court to enter into a new stipulation wherein it was agreed that the plaintiffs each had a claim not to exceed $50,000. The record of the July 15, 2005, hearing indicates that the plaintiffs and defendants were more concerned about the total damages available for recovery under the policy, as well as whether the plaintiffs had a derivative claim, as opposed to the method of calculating damages. It is clear from a reading of the record of the July 15, 2005, hearing that there was much confusion as to what, if anything, was stipulated to by the plaintiffs and defendants. At no time was the method for calculation of damages even addressed. The trial judge felt that a method of calculation different than that jurisprudentially established had been agreed to by the parties, but it is clear from the record that the method of calculation used was not discussed and certainly was not agreed to by the defendants.

The defendants had a vested interest in limiting their exposure and had already given up their right to a jury trial in order to protect that interest. It is clear that such method of calculation as used by the trial court would expose the defendants to potentially greater damages without any corresponding potential benefit and, as such, one would not expect the defendants to agree to such change. We find that the trial

13

judge improperly applied what he understood the method of calculation to be under the new stipulation when the record reflects no intention by the defendants to be bound to any method of calculation different from that they had already agreed to in the original stipulations. As such, because there was no meeting of the minds regarding this integral part to the new stipulation, we find that there was no new stipulation entered into by the parties on July 15, 2005, and reinstate those stipulations improperly allowed to be withdrawn.

## ASSIGNMENT OF ERROR # 3:

The defendants contend that the trial court erred in its method of calculating damages by awarding more than $50,000 to plaintiffs before those awards were reduced by the allocation of fault to Nelson Williams, Jr. considering the $50,000 stipulation agreed to by the plaintiffs on July 15, 2005. Defendants also contend that the awards given to Paul, Martha and Eunice Williams, individually, and on behalf of Ricardo Williams, were excessive. We agree with the defendants that the trial court improperly calculated the damages in its judgment and amend its judgment based upon the original stipulations entered into by the wrongful death plaintiffs. We disagree that there was any abuse of discretion in relation to the damages awarded to Paul Williams, Martha Williams and Eunice Williams, individually, and on behalf of Ricardo Williams.

The trial judge found damages over $50,000, reduced those damages by the 15% allocation of fault, then, if the resulting damages were over $50,000, he set the award at $50,000. The defendants argue that the trial judge erred in assessing damages over the $50,000 stipulations. Rather, they contend that the correct way to calculate the award would be to reduce any damages to $50,000 then reduce those

14

damages once more per the 15% fault allocated to the decedent, Nelson Williams, Jr. This would result in a maximum recovery of $42,500 per wrongful death plaintiff. The defendants hinge their position on a line of cases stemming from *Bullock v. Graham*, 96-711 (La. 11/1/96), 681 So.2d 1248. We have already determined that the original stipulations entered into were improperly allowed to be withdrawn, and that the new stipulation entered into at the July 15, 2005, hearing is invalid. Therefore, we look to the original stipulations as agreed upon by the parties to make a determination of whether the trial court used the proper method of calculation.

Before the trial for allocation of fault, plaintiffs Gwendolyn F. Williams, Paul D. Williams and Martha Williams stipulated that each one of their *damages* did not exceed $50,000. As per this stipulation, each of these plaintiffs agreed to waive their damages in excess of $50,000. Therefore, we find that the trial court erred in setting Gwendolyn F. Williams' damages at $100,000. We amend the judgment to reflect that Gwendolyn F. Williams' damages are $50,000 and as such, her award is to be reduced by 15% to $42,500. We find no error in the awards to Paul D. Williams and Martha Williams as their $50,000 damages, to be later reduced by the 15% fault, are within their stipulation.

The plaintiffs, Mary Williams, Eric Williams and Chastity Williams entered into a stipulation wherein they each asserted that pursuant to La..Code Civ.P. art. 1732 and the Louisiana Supreme Court case of *Benoit v. Allstate*, 00-424 (La. 11/28/00), 773 So.2d 702, they agreed that their respective *cause of action* did not exceed $50,000. In *Benoit*, the Louisiana Supreme Court overruled the portion of *Bullock*, 681 So.2d 1248, that held "cause of action" was synonymous with "amount in controversy." Rather they went on to define "cause of action" as "the value of the

plaintiff's cause of action against the defendant or defendants who are before the court..." *Benoit*, 773 So.2d at 708. When this stipulation was entered into, there had been no allocation of fault and the plaintiffs, in their petition for damages, had not claimed that Williams was at fault. Plaintiffs, Mary, Eric and Chastity Williams stipulated that the value of their individual cause of action against the defendants before the court would not exceed $50,000. Thus, we find that the trial judge erred in assigning a value in excess of the stipulations entered into by these plaintiffs. Therefore, we amend the judgment to reflect that the value of each Mary, Eric and Chastity Williams' claim, prior to being reduced as per the 15% allocation of fault, to be $50,000. Thereafter, there is further reduction for the allocation of 15% of fault on the part of Nelson Williams, Jr., resulting in an award of $42,500 to each.

Defendants also raise the question of whether the damage awards to Paul Williams, Martha Williams and Eunice Williams, on behalf of Ricardo Williams were excessive and as such were an abuse of discretion on the part of the trial court.

The proper standard for reviewing general damage awards was enunciated in *Guillot v. Doe*, 03-1754, p. 5-6 (La.App. 3 Cir. 6/30/04), 879 So.2d 374, at 379-80.

> An appellate court should rarely disturb an award of damages due to the great and, even, vast discretion vested in the trial court. We can disturb such awards, only, when the trial court clearly abused its discretion.
>
> Reasonable people often disagree over the appropriate measure of general damages in a particular case. Yet, "[i]t is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award." We should not rely on a comparison of prior awards in cases with similar medical injuries to decide whether the trial court abused its discretion. "The primary considerations in assessing damages are the severity and duration of the injured party's pain and suffering."

16

Ordinarily, a quantum award is reviewed on appeal by the "much discretion" standard. *Reck v. Stevens*, 373 So.2d 498 (La.1979). If an abuse of discretion is found, the appellate court will only lower the award to the highest (or raise the award to the lowest) point which is reasonably within the discretion afforded the court; the appellate court does not substitute its judgment for that of the trial court judge or jury in this situation. *Coco v. Winston Industries, Inc.*, 341 So.2d 332 (La.1976).

With respect to Paul Williams and Martha Williams we find that the damages of $50,000 each within the vast discretion afforded the trial judge. The testimony of Mary Williams indicated that the decedent loved both Paul and Martha, and that they would come and visit from time to time. The defendants put forth no evidence to controvert this testimony. As such, we find that the trial court was reasonable in its assessment of damages with respect to Paul Williams and Martha Williams and affirm its damages awarded to them.

We also affirm the damages awarded to Eunice Williams, individually, and on behalf of her minor son, Ricardo Williams. There is evidence in the record to show that Ricardo Williams suffered from headaches, a deviated septum, neck and back spasms, and nose bleeds for over a year. The trial judge's award of $44,500 in general damages plus $6,495.86 in special damages in favor of Ricardo Williams against the defendants was within the range allowable for these injuries and thus not an abuse of discretion. Therefore, we affirm the trial court's judgment with respect to the damages of Ricardo Williams finding him entitled to recovery of $43,346.48 from the defendants after reduction for the 15% fault attributed to Nelson Williams, Jr.

**ASSIGNMENT OF ERROR #4:**

Defendants contend that the trial court erred in granting a motion for summary

judgment for the application of the $300,000 "each accident" policy limit as opposed to the application of the $100,000 "each person" policy limit for the collective recovery of the plaintiffs.

Appellate courts conduct a de novo review of rulings on motions for summary judgment. "It is well established that a summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." *Palma, Inc., v. Crane Servs. Inc.*, 03-0614 (La.App. 3 Cir. 11/5/03), 858 So.2d 772, 774 quoting *Shelton v. 700/Associates*, 01-0587, p.5 (La. 10/16/01), 798 So.2d 60, 65; La.Code Civ.P. art. 966.

"When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.Civ.Code art. 2046. "If the words of a contact are clear, explicit, and lead to no absurd results, it must be interpreted by reference to the 'four corners' of the document and no further interpretation can occur in search of the parties' intent." *Hebert v. Ins. Ctr., Inc.*, 97-298 p.5 (La.App. 3 Cir. 1/7/98), 706 So.2d 1007, 1011, *writ denied,* 98-353 (La. 3/27/98), 716 So.2d 888.

The declarations page of the State Farm Policy limits the liability protection provided under Coverage A-Bodily Injury to "each person" $100,000, "each accident" $300,000. "Bodily injury" is defined in the policy as, "physical bodily injury to a person and sickness, disease or death which results from it." The word "person" is defined by the policy as "a human being." Therefore, it is clear that the term "bodily injury" means physical bodily injury to a human being, namely Nelson

18

Williams, Jr., and his death which results from that physical bodily injury.

> The "Limits of Liability" section of the policy is as follows:

> The amount of bodily injury liability coverage is shown on the declarations page under "Limits of Liability - Coverage A - Bodily Injury, Each Person, Each Accident." Under "Each Person" is the amount of coverage for all damages due to *bodily injury* to one *person*. *"Bodily injury to one person"* includes all injury and damages to others resulting from this *bodily injury*, and all emotional distress resulting from this *bodily injury* sustained by other *persons* who do not sustain *bodily injury*. Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to *bodily injury* to two or more *persons* in the same accident.

The "each person" limit is the amount of coverage the policy provides for all damages due to "bodily injury to one person." The policy then states that "Bodily injury to one person" entails "all injury and damages to others resulting from this *bodily injury*, and all emotional distress resulting from this *bodily injury* sustained by other *persons* who do not sustain *bodily injury*." The trial court found that the language in State Farm's policy "strains the meaning of the policy and achieves an absurd result." We disagree. We find that the language of the policy clearly dictates that the plaintiffs' damages are covered under the "Each Person" limit. All injuries to the plaintiffs for the wrongful death of Nelson Williams, Jr. fit under the definition of "bodily injury to one person." The definition of "bodily injury to one person" can be understood to be:   All of the injuries to the plaintiffs resulting from the physical bodily injury to Nelson Williams, Jr. and all emotional distress resulting from the physical bodily injury to Nelson Williams, Jr. sustained by the plaintiffs who did not sustain physical bodily injury.

The plaintiffs contend that the controlling case for the policy here is *Crabtree v. State Farm Ins. Co.*, 632 So.2d 736 (La.1994). We find this contention is without merit. The language of the policy of the relevant provision in *Crabtree* is different

from the language of the policy here.

> Under the "Limits of Liability" section in *Crabtree* it said:
>
> Under "Each Person" is the amount of coverage for all damages due to bodily injury to one person. "Bodily injury to one person" includes all injury and damages to others resulting from this bodily injury.
>
> "Each Accident" is the total amount of coverage for all damages due to bodily injury to two or more persons in the same accident, subject to the amount shown under "Each Person".

*Crabtree*, 632 So.2d at 742.

Here, the policy's definition of "bodily injury to one person" adds the phrase "and all emotional distress resulting from this *bodily injury* sustained by other *persons* who do not sustain *bodily injury*." The addition of the phrase "and all emotional distress resulting from this *bodily injury* sustained by other *persons* who do not sustain *bodily injury*" clearly makes the definition of "bodily injury to one person" include both physical and emotional damages recoverable to all wrongful death claimants for the death of one person.

Therefore, we find that this policy's definition of "bodily injury to one person" encompasses all claims asserted by the plaintiffs. As such, we find that all claims asserted by the wrongful death claimants to fit under the "each person" limit of $100,000. We find that the language contained within the "four corners" of the policy is clear, unambiguous and does not lead to absurd results. Therefore, we reverse the trial court's granting of summary judgment that found the coverage under the State Farm Policy was that of the "each accident" limit and find that all of the wrongful death plaintiffs are to recover collectively from the "each person" limit, $100,000.

## CONCLUSION:

The judgment of the trial court in allocating 85% of the fault to Venson Aymond and 15% of the fault to Nelson Williams, Jr. for the February 14, 2003,

accident is affirmed.

We reverse the trial court's granting of a motion for summary judgment allowing the wrongful death plaintiffs to recover up to the $300,000 "each accident" policy limit and render that the $100,000 "each person" limit is the proper limit available for recovery by the wrongful death plaintiffs.

We reverse the trial court's ruling allowing the original stipulations agreed to by the wrongful death plaintiffs to be withdrawn. We also reverse the trial court's ruling that the parties entered into a new stipulation at the hearing on July 15, 2005. We affirm the trial court judgment awarding damages to Paul Williams and Martha Williams. We also affirm the damages awarded to Eunice Williams, individually, and on behalf of her minor son, Ricardo Williams. We amend the trial court's judgment awarding damages to the plaintiffs by using the correct method of calculation of damages according to the original stipulations agreed to by the parties as follows:

> Mary Williams, $42,500.00 ($50,000.00 minus 15% for the fault of Nelson Williams, Jr.) together with legal interest from the date of judicial demand in Suit No. 2003-4786-A and court costs;

> Eric Williams, $42,500.00 ($50,000.00 minus 15% for the fault of Nelson Williams, Jr.) together with legal interest from the date of judicial demand in Suit No. 2003-4786-A and court costs;

> Chastity Williams, $42,500.00 ($50,000.00 minus 15% for the fault of Nelson Williams, Jr.) together with legal interest from date of judicial demand in Suit No. 2003-4786-A and court costs;

> Paul Darren Williams, $42,500.00 ($50,000.00 minus 15% for the fault of Nelson Williams, Jr.) together with legal interest from date of judicial demand in Suit No. 2003-5125-A and court costs;

> Gwendolyn Francis Williams, $42,500.00 ($50,000.00 minus 15% for the fault of Nelson Williams, Jr.) together with legal interest from date of judicial demand in Suit No. 2003-5125-A and court costs;

Martha Yvette Williams, $42,500.00 ($50,000.00 minus 15% for the fault of Nelson Williams, Jr.) together with legal interest from date of judicial demand in Suit No. 2003-5125-A and court costs; and

Eunice Williams, individually, and on behalf of her minor son, Ricardo Williams, $43,346.48 ($50,995.86 minus 15% for the fault of Nelson Williams, Jr.) together with legal interest from date of judicial demand in Suit No. 2003-5125-A and court costs.

The costs of the appeal are divided one half to the wrongful death plaintiffs, and one half to the defendants. Plaintiff, Eunice Williams is not cast with costs of appeal.

**AFFIRMED IN PART, REVERSED IN PART, AMENDED IN PART, AND RENDERED.**