971 So.2d 1238 (2007)
Tara Labove HEBERT, et al.
v.
Scotty L. WEBRE, et al.
Fletcher Gabriel Lalande, et ux.
v.
Scotty L. Webre, et al.
No. CA 07-95.
Court of Appeal of Louisiana, Third Circuit.
December 5, 2007.
Jennifer Jones, Glenn W. Alexander, Attorneys at Law, Cameron, LA, for Plaintiffs/Respondents: Tara LaBove Hebert, Olivia Marie Hebert, Thomas Christopher Hebert, John Michael Hebert, Succession of Christopher Allen Hebert.
Katherine P. Martin, Gretchen Heider Mayard, Lafayette, LA, for Defendant/Applicant: State Farm Mutual Insurance Company.
*1239 Court composed of ULYSSES GENE THIBODEAUX, Chief Judge, and SYLVIA R. COOKS, JOHN D. SAUNDERS, OSWALD A. DECUIR, JIMMIE C. PETERS, MARC T. AMY, MICHAEL G. SULLIVAN, GLENN B. GREMILLION, ELIZABETH A. PICKETT, BILLY H. EZELL, J. DAVID PAINTER, and JAMES T. GENOVESE, Judges.
PETERS, J.
This matter arises from an application for supervisory writs filed by State Farm Mutual Automobile Insurance Company (State Farm). State Farm sought reversal of the trial court's judgment on two motions for summary judgment addressing the extent of coverage provided under the uninsured/underinsured motorist (UM) coverage provisions of an insurance policy it issued to Christopher Allen Hebert. This court initially denied the writ application in an unpublished opinion. Hebert v. Webre, 07-95 (La.App. 3 Cir. 4/11/07). State Farm then filed an application for supervisory writs with the Louisiana Supreme Court. The supreme court granted the application but did not render a decision on the merits. Instead, the supreme court remanded the matter to this court with instructions to hear the case en banc and to consider the impact of our decision in Williams v. Aymond, 05-1547, 05-1548 (La.App. 3 Cir. 12/6/06), 945 So.2d 823, writs denied, 07-5 (La.3/9/07), 949 So.2d 442 and 07-69 (La.3/9/07), 949 So.2d 449, on the disposition of the issue raised in State Farm's supervisory writ application. Hebert v. Webre, 07-992 (La.6/29/07), 959 So.2d 517. We have complied with the supreme court's instructions and, for the reasons that follow, we reaffirm our decision denying State Farm's supervisory writ application.

DISCUSSION OF THE RECORD
This litigation arises from a two-vehicle accident which occurred on May 11, 2005, at the intersection of Louisiana Highway 397 and Louisiana Highway 14 in Cameron Parish, Louisiana. Christopher Allen Hebert, the owner and operator of one of the vehicles involved in the accident, died as a result of the injuries he sustained therein. His guest passenger, Fletcher Gabriel LaLande, survived the accident but sustained serious personal injuries.
Two separate suits for damages arose from this accident. Christopher Allen Hebert's surviving spouse, Tara LaBove Hebert, filed the first on behalf of herself, in her capacity as natural tutrix of her three minor children, and as administratrix of the succession of her husband (herein collectively referred to as the Hebert plaintiffs). The Hebert plaintiffs named State Farm, the UM insurer of the Hebert vehicle, as one of the defendants. Fletcher Gabriel LaLande and his wife, Janetta Theriot LaLande, filed the second suit arising from the accident. The defendants they named in their suit also included State Farm as the UM insurer of the Hebert vehicle. Although the trial court consolidated these two suits, the matter now before us relates only to the Hebert plaintiffs' phase of the litigation as it is affected by State Farm's policy provisions.
With regard to the issue now before us, the relevant facts are not in dispute. State Farm provided UM coverage to the vehicle driven by Christopher Allen Hebert with policy limits of $100,000.00 per person and $300,000.00 per accident. The driver of the other vehicle involved in the accident, Scotty L. Webre, had liability insurance with Progressive Insurance Company, with policy limits of $25,000.00 per person and $50,000.00 per accident. Because of the severity of the injuries sustained by the Hebert plaintiffs, Webre *1240 was an underinsured motorist. Thus, the Hebert plaintiffs are entitled to recover under the State Farm policy, subject only to the policy limitations.
At some point after the accident, State Farm paid the Hebert plaintiffs $100,000.00. State Farm then met the Hebert plaintiffs' suit with a motion for summary judgment seeking dismissal from that phase of the litigation based on this payment. Specifically, State Farm asserted that all claims for damages to the various Hebert plaintiffs were included within the $100,000.00 per person limit of the policy, and, therefore, it had fulfilled its contractual obligations to those plaintiffs. The Hebert plaintiffs responded to this motion by filing a motion for summary judgment of their own seeking the opposite relief. That is to say, the Hebert plaintiffs asserted that their claims should be subject to the $300,000.00 per accident limit. After a hearing on both motions, the trial court concluded that all of the claims of the Hebert plaintiffs were subject to the $300,000.00 per accident limitation and not the $100,000.00 per person limitation. In reaching this conclusion, the trial court rejected State Farm's motion and granted the Hebert plaintiffs' motion.
As previously stated, we affirmed these judgments by rejecting State Farm's application for supervisory writs. The matter has now been heard en banc pursuant to the Louisiana Supreme Court's instruction, and we now reach the same result as did the original three-judge panel.

OPINION
In Babin v. Winn Dixie La., Inc., 00-78, pp. 3-4 (La.6/30/00), 764 So.2d 37, 39-40, the Louisiana Supreme Court addressed the conditions under which a summary judgment should be granted:
A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B). This article was amended in 1996 to provide that "summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action . . . The procedure is favored and shall be construed to accomplish these ends." La.Code Civ.P. art. 966(A)(2).
Appellate courts review a trial court's grant or denial of a motion for summary judgment using the de novo standard of review, under the same criteria that govern the trial court's consideration of whether a summary judgment is appropriate in any given case. Indep. Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226.
In the matter now before us, the only issue is one of contractual interpretation, which is a question of law subject to a de novo standard of review. Mitchell v. Patterson Ins. Co., 00-612 (La.App. 3 Cir. 12/6/00), 774 So.2d 366. An insurance policy is a contract between the parties and should be construed by applying the general rules of interpretation of contracts set forth in the Louisiana Civil Code. La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 93-911 (La.1/14/94), 630 So.2d 759. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ.Code. art.2046. Ambiguous insurance policy provisions generally are to be construed against the insurer and in favor of coverage. La.Civ.Code art.2056, Carrier v. Reliance Ins. Co., 99-2573 (La.4/11/00), 759 So.2d 37. The insurance policy should be construed as a whole; one portion of the policy should not be construed separately *1241 while another is disregarded. La. Civ.Code art.2050, Thiels v. Am. Int. S. Ins. Co., 03-774 (La.App. 3 Cir. 12/10/03), 861 So.2d 757. Words and phrases used in the policy are to be construed using their plain, ordinary, and generally prevailing meaning, unless the words or phrases have acquired a technical meaning. La.Civ. Code art.2047.
The State Farm policy begins with a number of basic definitions, including the following:

Bodily Injurymeans physical bodily injury to a person and sickness, disease or death, which results from it.

Insuredmeans the person, persons or organization defined as insureds in the specific coverage.

Personmeans a human being.

Relativemeans a person related to you or your spouse by blood, marriage or adoption who resides primarily with you.

You or Yourmeans the named insured or named insureds shown on the declarations page.
All but one of the listed definitions have the same meaning throughout the policy. The one variable general definition is that of an insured under the policyit changes from section to section in the policy.[1]
The UM coverage provisions are found in SECTION III of the policy.[2] The applicable language concerning who may collect damages caused by an uninsured/underinsured driver provides:
We will pay nonpunitive damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be sustained by an insured and caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle.

State Farm does not dispute the fact that all of the plaintiffs are entitled to recover some damages under the UM provisions of the policy.[3] Instead, it argues that it has fulfilled its obligation to the Hebert plaintiffs with the $100,000.00 payment. In making this argument, it relies on the language of SECTION III of the policy, which reads as follows:
The amount of coverage is shown on the declarations page under "Limits of Liability-U-Each Person, Each Accident". Under "Each Person" is the amount of coverage for all damages due to bodily injury to one person. "Bodily injury to one person" includes all injury and damages to others resulting from this bodily injury, and all emotional distress *1242 resulting from this bodily injury sustained by other persons who do not sustain bodily injury. Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to bodily injury to two or more persons in the same accident.
State Farm directs this court to our decision in Williams, 945 So.2d 823, asserting that it was directly on point. We initially rejected this argument and, after following the supreme court's mandate in its remand, reject it again. In explaining why we reject State Farm's argument, we must first address the supreme court's holding in Crabtree v. State Farm Ins. Co., 93-509 (La.2/28/94), 632 So.2d 736 (La. 1994), and its application to the facts before us.
In Crabtree, at issue was a spouse's claim for mental anguish damages she suffered from having observed her husband's motorcycle being struck by another vehicle.[4] The litigants stipulated that the plaintiff sustained a Lejeune injury, the extent of which exceeded $25,000.00. They also stipulated that State Farm provided liability insurance coverage to the defendant who had struck the husband's motorcycle, and that the policy provided limits of $25,000.00 per person and $50,000.00 per accident. The State Farm policy at issue in Crabtree defined bodily injury to a single person to include "all injury and damages to others resulting from this bodily injury" for the purpose of applying the single person limit to multiple claims. Id. at 738. State Farm argued that the plaintiff's claim was derivative of her husband's personal injury claim and that both her claim and that of her husband were subject to the $25,000.00 per person limit. The plaintiff argued that her claim was a separate claim such that the entire $50,000.00 policy limit was available to her and her husband. The supreme court "granted certiorari to consider whether a wife's mental anguish suffered upon witnessing an injury to her husband constitutes a separate bodily injury under an automobile insurance policy thereby entitling the wife to her own per person policy limit subject to the aggregate per accident limit." Id. at 737-38. The supreme court concluded that, under the circumstances of that case, the wife's mental anguish did constitute a separate bodily injury.
The supreme court began by applying the basic contractual rules of construction to interpret the policy terms. In doing so, the supreme court stated the following:
Construing the policy provisions in light of each other so that each is given the meaning suggested by the policy as a whole, we conclude the policy language defining "bodily injury to one person" to include "all injury and damages to others resulting from this bodily injury" does not reasonably encompass bodily injury to others under the single person limit. We interpret the policy to mean instead that where one person suffers bodily injury, or where one person suffers bodily injury and one or more other persons suffer injury and damages other than bodily injury as a result of the former's bodily injury, the amount of coverage for bodily injury to one person applies ($25,000). This interpretation is consistent with State Farm's contractual obligation to "pay damages which an insured becomes legally liable to pay because of. . . . bodily injury to others." On the other hand, where two or more *1243 persons suffer bodily injury in the same accident, the aggregate amount of coverage for each accident applies ($50,000) even if one or more persons' bodily injury "results from" another's bodily injury.
Id. at 742.
The supreme court then turned to the question of whether Mrs. Crabtree's mental anguish constituted a bodily injury. In addressing this question, the supreme court noted that the State Farm policy definition of "bodily injury" was ambiguous.
The definition is ambiguous in at least two respects. First, the definition is circular in that the term being defined is used within its own definition: "Bodily injury is bodily injury to a person, and sickness, disease or death which results from it." Secondly, if the definition was intended to cover only external, physical injuries, then "bodily injury" easily could have been defined in a more restrictive fashion through the use of such words.
Moreover, interpretation of the term "bodily injury" to include Lejeune damages is consistent with the jurisprudence of this court. In Lejeune, 556 So.2d at 570, we made it clear that in order to be compensable, mental pain and anguish suffered because of injury to a third person must be "both severe and debilitating." We pointed out that "[o]ther states have recognized that `[t]he essence of the tort is the shock caused by the perception of the especially horrendous event.'" Id. at 570 n. 11 (quoting Gates v. Richardson, 719 P.2d 193 (Wyo. 1986)) (emphasis added). Additionally, although not having to do with the interpretation of a policy definition, it is nonetheless instructive to note that in Sparks v. Tulane Medical Center Hospital & Clinic, 546 So.2d 138, 146 (La. 1989), we interpreted the phrase "physical structure of the body" as it is used in the Worker's Compensation Act to include injuries to the mental health of an employee. We observed: "An individual's mental health is an essential component to the overall operation of the physical structure of his body. . . . [T]here is no bright-line distinction between `physical' and `mental' injuries, either in medicine or in law. . . . "
Where the language of an insurance policy provision is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied. In this case, it is reasonable to find "bodily injury" as defined in the policy herein includes severe and debilitating mental pain and anguish such as that suffered by Lejeune claimants. We therefore conclude Mrs. Crabtree's mental anguish constitutes "bodily injury" as defined in the State Farm policy.
Id. at 744-45.
After the Crabtree decision, State Farm apparently attempted to cure the circular defect recognized in Crabtree by adding the word "physical" in its definition of "bodily injury." Instead of defining "bodily injury" as "bodily injury to a person and sickness, disease or death which results from it," as was the case in Crabtree, it now defines "bodily injury" as "physical bodily injury to a person and sickness, disease or death which results from it." Additionally, it amended that portion of the policy addressing limited recovery for insured persons seeking to recover damages arising from the bodily injury of an insured. Instead of the "all injury and damages to others resulting from this bodily injury" language found in Crabtree, State Farm changed it to include within the definition of bodily injury to one person "all emotional distress resulting from this bodily injury sustained by other persons who do not sustain bodily injury." *1244 This was the language before this court in Williams, 945 So.2d 823.
The wrongful death plaintiffs in Williams were the heirs of the driver of a tractor who had been killed in a tractor/automobile accident, and State Farm provided liability coverage to the driver of the automobile involved with limits of $100,000.00 per person and $300,000.00 per accident. Although the court in Williams considered the policy in the context of liability coverage and not UM coverage, it contained basically the same language as is now before us, and the issue was the samewhether all of the claims of the wrongful death plaintiffs were subject to the per person limit or the per accident limit. This court concluded that the addition of the phrase "all emotional distress resulting from this bodily injury sustained by other persons who do not sustain bodily injury" to the definition of "bodily injury to one person" clearly made it "include both physical and emotional damages recoverable to all wrongful death claimants for the death of one person." Id. at 837.
We disagree that this language is all inclusive as suggested in Williams. Were we to substitute the definition of "bodily injury" into the limitation language, it would read as follows: "Physical bodily injury to one person" includes all injury and damages to others resulting from this physical bodily injury, and all emotional distress resulting from this physical bodily injury sustained by other persons who do not sustain physical bodily injury." Thus, a third person (who is also an insured under the policy) who does sustain physical bodily injury as a result of the injury to the one person, is not excluded from exerting his or her individual claim for that physical bodily injury. Recognizing the specific holding in Crabtree that severe and debilitating mental pain and anguish can rise to the level of a physical bodily injury, we find that nothing in the new policy language would warrant a result different from that reached by the supreme court in its prior decision.
We also note that the supreme court in Crabtree clearly stated that "if the definition was intended to cover only external, physical injuries, then `bodily injury' easily could have been defined in a more restrictive fashion through the use of such words." Id. 744 (emphasis added). For whatever reason, State Farm chose not to limit its coverage to external physical injuries. Thus, when it attempted to limit the recovery of wrongful death plaintiffs who sustained emotional distress from the bodily injury of the deceased, it limited that recovery only for those who "[did] not sustain bodily injury" under SECTION III of the policy. Therefore, to the extent that it appears to require application of the "per person" limit in an UM insurance policy to a claimant who sustains severe and debilitating mental pain and anguish that rises to the level of a physical injury, we overrule this court's decision in Williams v. Aymond, 945 So.2d 823.
The trial court correctly concluded that those wrongful death plaintiffs who, as a result of the death of Christopher Allen Hebert, suffered mental anguish and/or emotional distress to such an extent as to constitute a physical injury under the criteria set forth in Crabtree would not be limited to the per person limit of the State Farm policy. Thus, we find no error in either the trial court's denial of State Farm's motion for summary judgment or its grant of the Hebert plaintiffs' motion for summary judgment, subject obviously to the issue of proof of injuries at trial.

CONCLUSION
For the foregoing reasons, we deny the application for supervisory writs filed by State Farm Mutual Automobile Insurance *1245 Company. We assess all costs of this supervisory writ application to State Farm Mutual Automobile Insurance Company.
APPLICATION FOR SUPERVISORY WRIT DENIED.
AMY, J., dissents and assigns written reasons.
AMY, J., dissenting.
The majority acknowledges the differences in the policy in this case and that in Crabtree v. State Farm Ins. Co., 93-0509 (La.2/28/94), 632 So.2d 736, but concludes that these changes do not resolve the ambiguity in the policy terms observed by the supreme court. In my opinion, the differences in the policy are significant and distinguish the present version from that before the supreme court in Crabtree. In that case, the policy defined "bodily injury" as:
[B]odily injury to a person and sickness, disease or death which results from it.
Id. at 739. Under the Limits of Liability section, the Crabtree policy provided, in part:
Under "Each Person" is the amount of coverage for all damages due to bodily injury to one person. "Bodily injury to one person" includes all injury and damages to others resulting from this bodily injury.
Id. The supreme court found the language ambiguous insofar as the term being defined, "bodily injury," was used within its own definition. It also remarked that "if the definition was intended to cover only external, physical injuries, then `bodily injury' easily could have been defined in a more restrictive fashion through the use of such words." Id. at 744.
I find that the amendments to the policy address both of these concerns. First, the policy now defines "bodily injury" as:

[P]hysical bodily injury to a person and sickness, disease or death which results from it.
(Amendment emphasized). Additionally, a clause has been inserted into the Limits of Liability section to read:
Under "Each Person" is the amount of coverage for all damages due to bodily injury to one person. "Bodily injury to one person" includes all injury and damages to others resulting from this bodily injury, and all emotional distress resulting from this bodily injury sustained by other persons who do not sustain bodily injury.

(Amendment emphasized).
Of course, Crabtree explained that severe and debilitating mental pain and anguish can rise to the level of a bodily injury. However, the alterations to the language since Crabtree not only couple "physical" with "bodily injury," but further include the final clause regarding emotional distress. The policy is now sufficiently clear to resolve the question of whether all emotional distress, severe and debilitating or not, is included within the "Each Person" limitation. It seems to me that these changes sufficiently respond to the observation that "if the definition was intended to cover only external, physical injuries, then `bodily injury' easily could have been defined in a more restrictive fashion through the use of such words." Crabtree, 632 So.2d at 744. The lack of inclusion of "external" in the definition does not detract from the obvious intent to channel recovery for all mental injuries related to the physical bodily injury of another into the "Each Person" limitation.
For these reasons, I would adhere to the reasoning expressed in this court's decision in Williams v. Aymond, 05-1547, 05-1548 (La.App. 3 Cir. 12/6/06), 945 So.2d 823, writ denied, 07-5 (La.3/9/07), 949 *1246 So.2d 442, writ denied, 07-69 (La.3/9/07), 949 So.2d 449 and would grant the writ.
NOTES
[1] The variations evolve primarily because of the use of "you" and "your" in some definitions and the use of "person" in others. This becomes significant in evaluating who is protected under the various coverages because the use of the former can imply coverage of an organization while the use of the latter restricts coverage to a "human being." The liability section uses the former classifications while the medical payment section and the UM section use the latter. The section relative to property damage coverage uses both classifications, depending on the damage at issue.
[2] SECTION III lists three types of UM coverage available to an individual insured: non-punitive damages, economic-only damages, and property damage. The only section at issue in this litigation is the section relative to nonpunitive damages.
[3] SECTION III defines an insured as:

1. the first person named in the declarations;
2. his or her spouse;
3. their relatives; and
4. any other person while occupying [the insured vehicle]. . . .
5. any person entitled to recover damages because of bodily injury to an insured under 1 through 4 above.
[4] Such damages are generally referred to as Lejeune damages based on the holding in Lejeune v. Rayne Branch Hosp., 556 So.2d 559 (La.1990), said decision being later codified by the legislature in La.Civ.Code art. 2315.6.